## Schill's License.

*Physician's license—Revocation—Violation of liquor laws—Conviction—Plea of guilty—"Moral turpitude"—Words and phrases—Acts of June 3, 1911, July 25, 1913, May 24, 1917, and April 20, 1921.*

1. Under section 12 of the Act of June 3, 1911, P. L. 639, as amended by the Acts of July 25, 1913, P. L. 1220, May 24, 1917, P. L. 271, and April 20, 1921, P. L. 158, the State Board of Medical Education and Licensure has no authority to revoke the license of a physician who has pleaded guilty to a criminal indictment, but who has never been sentenced.

2. A physician who has been convicted of a violation of the Federal Prohibition Law is not guilty of "a crime involving moral turpitude" within the meaning of the Act of June 3, 1911, P. L. 639, as amended; and his license cannot be revoked because of such conviction.

3. Such violations of the act are merely *mala prohibita*, and are not inherently immoral.

Department of Justice. Opinion to Dr. Irvin D. Metzger, President, State Board of Medical Education and Licensure.

HERTZLER, Special Dep. Att'y-Gen., March 31, 1927.—I have your request to be advised (1)) whether or not your board has authority to revoke the license of Dr. J. J. Schill, of the Schenley Apartments, Pittsburgh, Pennsylvania, because he pleaded guilty to the charge of having knowingly issued six prescriptions for liquor for beverage purposes; and (2) whether the board would be justified in summoning Dr. Schill to show cause why his license should not be suspended or revoked; and (3) if the summons is issued to Dr. Schill, what charge should be made against him.

The authority of the State Board of Medical Education and Licensure to revoke or suspend a physician's right to practice medicine and surgery in this State is based upon section 12 of the Act of June 3, 1911, P. L. 639, as amended by the Acts of July 25, 1913, P. L. 1220, May 24, 1917, P. L. 271, and April 20, 1921, P. L. 158, which provides that "The State Board of Medical Education and Licensure may refuse, revoke or suspend the right to practice medicine and surgery in this State for any or all of the following reasons, to wit: The conviction of a crime involving moral turpitude, habitual intemperance in the use of ardent spirits or stimulants, narcotics or any other substance or any condition which impairs intellect and judgment to such an extent as to incapacitate for the performance of professional duties."

From your inquiry, it is not clear whether or not Dr. Schill has been convicted of any crime. You say he "plead guilty," but do not state that a sentence has been imposed upon him. Section 12 of the act referred to states that the person whose license the board may suspend or revoke must be convicted of a crime involving moral turpitude. The word "conviction" has a popular as well as a legal meaning. In common parlance, the verdict of a court is deemed a conviction, but "when the law speaks of conviction it means judgment and not merely a verdict, which in common parlance is called a conviction," Tilghman, C. J., in Smith *v.* Com., 14 S. & R. 69 (1826), and ". . . when conviction is made the ground of some disability or special penalty, a final adjudication by judgment is essential:" Com. *v.* Miller, 6 Pa. Superior Ct. 35 (1897).

The Supreme Court of this Commonwealth, in the case of Com. *v.* Minnich, 250 Pa. 363 (1915), stated: "A verdict of a jury, without more, is but the expression of the collective opinion of twelve men, which concludes nothing and supports nothing, except as it is followed by a judgment; and then it is the judgment, and not the verdict, that marks the conclusion of the issue and

gives it efficiency." Deputy Attorney-General McNees, on June 26, 1922, rendered an opinion to your board in the case of Dr. W. H. Theel, of Philadelphia, whose license had been revoked on the ground of his conviction of illegal advertising. Dr. Theel had raised the question as to the authority of your board to revoke his license when no sentence was ever imposed upon him. You were advised that a mere plea of guilty without the imposition of a sentence was not a conviction, and, therefore, you had not the right to suspend or revoke the license in question. See 2 D. & C. 339 (1923).

Assuming that a sentence has been imposed in this case, your request resolves itself into the question whether a conviction of a crime in violation of the Federal Prohibition Law is of such gravity as to constitute moral turpitude. The word "moral," when used with the word "turpitude," does not seem to add anything to the meaning of the latter term other than that emphasis which results from tautological expression: 41 Corpus Juris, 212.

The term "moral turpitude" had a positive meaning at common law. It is defined to be "An act of baseness, vileness or depravity in the private or social duties which a man owes to his fellow-men or to society in general:" 20 Am. & Eng. Ency. of Law, 872. 2 Bouvier's Law Dictionary (3rd ed.), 2247, defines moral turpitude as "An act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow-men or to society in general, contrary to the accepted and customary rule of right and duty between man and man." A distinction is often made, in that the act must be *mala in se* and not merely *mala prohibita; i. e.*, the act must be inherently immoral. "Moral turpitude implies something immoral in itself, regardless of the fact whether it is punishable by law. It must not be merely *mala prohibita*, but the act itself must be inherently immoral. The doing of the act itself, and not its prohibition by statute, fixes the moral turpitude:" 41 Corpus Juris, 212.

The sole question, therefore, to be determined is whether or not a conviction for a violation of the Federal Prohibition Law is a crime involving moral turpitude, assuming that Dr. Schill has been convicted of violating the Federal Prohibition Law.

This question has not arisen in this Commonwealth, but has arisen under similar circumstances in other jurisdictions. The Supreme Court of Alabama decided that the lower court erred when it permitted the district attorney to show that a witness had been convicted for making liquor in order to attack the credibility of the witness's testimony. The court stated that a conviction for making liquor does not involve moral turpitude. Chief Justice Anderson, in delivering the opinion of the court, states: "This court has several times defined the words 'moral turpitude,' as used in this provision, as meaning something immoral in itself, regardless of the fact that it is punished by law. It must not merely be *mala prohibita*, but the act itself must be inherently immoral. The doing of the act itself, and not its prohibition by statute, fixes the moral turpitude:" Marshall v. State, 207 Alabama, 566 (1922). The Court of Appeals of Alabama affirmed the decision of the lower court sustaining an objection made by state's counsel, where a witness was asked if he had not been charged with selling liquor, the court stating that proof of conviction of illegal sale of intoxicating liquors cannot be offered to impeach the witness's credibility, for the crime does not show moral turpitude: Swope v. State, 4 Alabama App. 83, 58 So. Repr. 809 (1912).

The Supreme Court of Vermont, in passing on the question as to the credibility of a witness, where the statute provided that a witness would be disqualified when he was shown to have been convicted of a crime involving

moral turpitude, stated that "The offence of selling intoxicating liquor does not, in legal sense, involve moral turpitude. It ranks, rather, with breaches of the peace by assaults and otherwise." See McGovern v. Hays and Smith, 75 Vermont, 104 (1902).

The Court of Criminal Appeals of Texas stated that evidence presented to show that the accused had been charged with, and convicted in the Federal court of, the transportation and possession of intoxicating liquor is inadmissible to impeach his credibility as a witness, the crime not involving moral turpitude and not being a felony under the Federal law. See Carter v. State, 271 S. W. Repr. 629 (1925). A violation of the local option law and of gaming was not an offence involving moral turpitude: Holmes v. State, 68 Texas Cr. R. 17.

The Court of Appeals of Georgia, where the question was raised as to the impeachment of a witness's testimony because he was convicted of a violation of the liquor law, decided that the offence of selling intoxicating liquor is not one of those offences involving moral turpitude, and a witness cannot be impeached by proof that he has violated this law: Edenfield v. State, 14 Ga. App. 401, 81 S. E. Repr. 253 (1914).

The courts do not make a distinction as to whether the crime is a misdemeanor or a felony, because moral turpitude may be involved in the commission of a misdemeanor as well as in a higher grade of crime. The Court of Appeals in the District of Columbia, in a case where a doctor had been convicted for sending through the mail a letter giving information as to where, by whom, and by what means an abortion might be performed and procured, and whose license had been revoked by the Board of Medical Supervisors of the District of Columbia, held that he was guilty of a crime involving moral turpitude. The court stated: "Abortion is an immoral, base crime; and he who aids and abets in its commission by an unlawful use of the mails is guilty of an act involving moral turpitude:" Kemp v. Board of Medical Supervisors, 46 App. Cases, D. of C., 173 (1917).

Since the adoption of the 18th Amendment, two courts have decided that a violation of the prohibition laws shows an attitude directly opposed to the moral tone of the people. In a recent decision of the Supreme Court of Kansas, the court held that an attorney was guilty of a crime involving moral turpitude and was properly disbarred because he was found guilty of violating the National Prohibition Act: State v. Bieber, 247 Pac. Repr. 875 (1926). Likewise, in a recent decision in the District of Columbia, the court sustained the disallowance of a policeman's pension upon proof of his having been convicted of trafficking in liquor, where a statute permitted the Commissioners of the District of Columbia to reduce or suspend the allowance of a retired police officer upon proof of a conviction of a crime involving moral turpitude: Rudolph v. United States, 6 Fed. Repr. (2nd) 487 (Court of Appeals, D. C., 1925).

It is to be noted that both these cases involved the conviction of a public or quasi-public officer, one being an attorney and the other a policeman. Both courts considered that the offence was aggravated by the official character of the offenders, as both referred to the sanctity of the oath administered.

The Supreme Court of Kansas, *supra*, stated: "In view of the fact that an attorney-at-law holds a position of a quasi-public character, as an officer of the court and enjoying important privileges not accorded to people in general, it is not unreasonable to exact a higher standard of better conduct from him than that expected from the rank and file of our citizenry."

Schill's License.

These decisions do not represent the weight of authority, nor are they in accord with the better reasoned opinions of the other cases referred to.

As stated above, the courts of this Commonwealth have not defined the meaning of the term "moral turpitude." The term "infamous," however, has been defined, and the question of what is and what is not an infamous crime is very closely related to the question of what is and what is not a crime involving moral turpitude. The courts have frequently used these terms synonymously.

It has been decided that burglary is not an infamous crime within the meaning of the Divorce Statute of May 8, 1854, P. L. 644, as amended by the Act of June 1, 1891, P. L. 142: Nevergold v. Nevergold, 20 Pa. C. C. Reps. 108 (1898) ; that larceny from a person is not an infamous crime within the meaning of the same statute: Bailey v. Bailey, 26 Pa. C. C. Reps. 553, 12 Dist. R. 37 (1902) ; and that a conviction of an assault with attempt to rape, accompanied by a sentence to the penitentiary for a period of two years and six months, is not a conviction of an infamous crime within the meaning of the divorce statute: Wheeler v. Wheeler, 13 Pa. C. C. Reps. 396, 2 Dist. R. 567 (1893). It was held that a witness who had been convicted of the crime of embezzlement, which carried with it a punishment of five years' imprisonment and a fine equal to the amount of the sum embezzled, was not disqualified from testifying, as the crime of embezzlement was not an infamous crime: Schuylkill County v. Copley, 67 Pa. 386 (1871). It was held that a conviction of bribery of voters was not an infamous crime which would disqualify a sheriff from the right to hold office: Com. v. Shaver, 3 W. & S. 338 (1842) ; and that the crime of receiving stolen goods was not an infamous crime: Com. v. Murphy, 3 Pa. L. J. Reps. 290 (1845). In the case of Andres v. Koppenheafer, 3 S. & R. 255 (1817), Gibson, J., in stating the rule in the case of libel, that words to be actionable per se must "subject the party to an indictment for a crime involving moral turpitude or that would draw after it an infamous punishment," said: "I think it unreasonable that a charge of having committed a nuisance, assault and battery and the like should be held actionable." It seems, therefore, that this distinguished jurist considered that such crimes, even though they are indictable, were not crimes involving moral turpitude.

It seems clear, therefore, that offences under the Federal Prohibition Act, such as illegal manufacture, sale or transportation of intoxicating liquor, are statutory crimes not punishable at common law. They are classified as *mala prohibita.* There being no inherent immorality in such acts, according to the great majority of decisions, their illegality results only from the fact of their being positively prohibited by statute. Inasmuch as this is the first offence, and as there are no aggravating circumstances connected therewith, you are, therefore, advised that the Board of Medical Education and Licensure has no authority under the law to revoke the license of Dr. Schill because he pleaded guilty to having knowingly issued six prescriptions for liquor for beverage purposes. Therefore, it follows that you are not justified in summoning Dr. Schill to show cause why his license should not be suspended or revoked. There is no charge that you can prefer against him, as the acts complained of do not entitle you to suspend or revoke his license for the conviction of a crime involving moral turpitude.

From C. P. Addams, Harrisburg, Pa.