## Dante Moretti and Dante Moretti t/a Moretti's Pharmacy v. State Board of Pharmacy.

Argued March 10, 1971, before Judges Crumlish, Jr., Manderino, and Mencer, sitting as a panel of three.

*Robert G. Sable*, with him *Ralph D. Tive*, and *Baskin, Boreman, Sachs, Gondelman & Craig*, for appellant.

*Walter W. Wilt*, Assistant Attorney General, with him *J. Shane Creamer*, Attorney General, for appellee.

Opinion by Judge Mencer, May 10, 1971:

This is an appeal by Dante Moretti from an adjudication and order of the State Board of Pharmacy suspending appellant's registered pharmacist's license and pharmacy permit. Pursuant to a citation issued by the Board, a hearing was held on October 21, 1969, at

which appellant appeared with counsel. An adjudication and order were evidently composed on February 25, 1970, suspending for fifteen days appellant's personal pharmacy license and his pharmacy permit. The chairman of the Board did not sign and date the order until April 10, 1970, so the above suspensions, which were "to become effective ten (10) days after service hereof," evidently did not take effect until at least April 20, 1970. Accordingly, appellant filed this appeal together with exceptions to the adjudication and order on or about April 21, 1970, and a supersedeas was granted him on April 22, 1970.

Among its Findings of Fact, the Board found "That on the 30th day of December, 1968, the Respondent pleaded guilty to two (2) counts of willfully attempting to evade and defeat income tax due the United States, in violation of 26 U.S.C. Section 7201 in the United States District Court for the Western District of Pennsylvania,"[1] and on that basis made Conclusions of Law that appellant had violated Sections 5(a)(2) and 5(b) (2) of the Pharmacy Act, the Act of September 27, 1961, P. L. 1700, as amended, 63 P.S. §§390-5(a)(2) and 390-5(b)(2).[2]

---

[1] 26 U.S.C. §7201 reads as follows: "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution." Similar provisions to this section were contained in several sections of the 1939 Internal Revenue Code which preceded the 1954 Internal Revenue Code of which §7201 is a part.

[2] Section 5(a)(2) reads: "(a) The board shall have the power to revoke or suspend the license of any pharmacist upon proof satisfactory to it that: * * * (2) He has been found guilty, pleaded guilty or entered a plea of nolo contendere to any offense in connection with the practice of pharmacy or involving moral turpitude before any court of record of any jurisdiction;",

Appellant contends, *inter alia,* that a conviction of willful evasion of payment of income tax is not in itself determinative of conviction of a crime involving moral turpitude.

The scope of our review was well stated by Chief Justice STERN in *Blumenschein v. Housing Authority of Pittsburgh,* 379 Pa. 566, 572-573, 109 A. 2d 331, 334-335 (1954) : "By a host of authorities in our own and other jurisdictions it has been established as an elementary principle of law that courts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power; they will not inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution. It is true that the mere possession of discretionary power by an administrative body does not make it wholly immune from judicial review, but the scope of that review is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. That the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; *judicial* discretion may not be substituted for *administrative* discretion." (Emphasis in original)

This appeal can be decided by dividing it into two parts: (1) whether under Section 5(a) appellant's pharmacist's license was validly suspended for 15 days; and (2) whether under Section 5(b) the permit of appellant's pharmacy was validly suspended for 15 days.

Section 5(b)(2) reads in pertinent part: "(b) The board shall have the power to revoke or suspend the permit of any pharmacy upon proof satisfactory to it that: * * * (2) The holder thereof has violated any of the provisions of this act or regulations of the board applicable to him . . .;".

(1)  *The pharmacist's license.*  Did Dante Moretti, by willfully attempting to evade and defeat income tax due the United States, in violation of 26 U.S.C. §7201, commit a crime "involving moral turpitude" in contravention of Section 5(a)(2) of the Pharmacy Act?  We think he did.

"Moral turpitude" is not a new term, but, rather, it is a term which is old in the law, and which has been used in the law for centuries.  It is a term which has been the subject of many decisions and which has been much defined by the courts; but its definition does not gain in clarity by prolixity of statement.  58 C.J.S. *Moral* (1948).  Various conflicting statements have been made concerning the term, but *In re Schill's License,* 9 Pa. D. & C. 202, 203 (1927) (which involved the question of whether a violation of the Federal Prohibition Law was a crime involving moral turpitude), has held that the term "moral turpitude" had a positive meaning at common law—"An act of baseness, vileness or depravity in the private or social duties which a man owes to his fellow-men or to society in general."  The most frequent definition of the term seems to be, "An act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow man, or to society in general, contrary to the accepted and customary rule of right and duty between man and man."

As a general rule, all crimes of which fraud is an element are looked on as involving moral turpitude.  *Jordan v. DeGeorge,* 341 U.S. 223, 71 S. Ct. 703, 95 L. Ed. 886 (1951); *In re Mann,* 151 W. Va. 644, 154 S.E. 2d 860 (1967); *In re Tietelbaum,* 13 Ill. 2d 586, 150 N.E. 2d 873 (1958); *In re Madden,* 184 A. 2d 204 (D.C. Mun. App. 1962).  But there is at least one discordant note in *United States v. Carrollo,* 30 F. Supp. 3, 7 (D.C. Mo. 1939): "We are not prepared to rule

that an attempt to evade the payment of a tax due the nation, or the commonwealth, or the city, or the school district, wrong as it is, unlawful as it is, immoral as it is, is an act evidencing baseness, vileness, or depravity of moral character. The number of men who have at some time sought to evade the payment of a tax or some part of a tax to some taxing authority is legion. Any man who does that should be punished civilly or by criminal sentence, but to say that he is base or vile or depraved is to misuse words."[3]

However, "moral turpitude" has also been frequently defined as "anything done knowingly contrary to justice, *honesty,* or good morals" (emphasis added), and we note the sixth footnote in *Chanan Din Khan v. Barber,* 147 F. Supp. 771, 775 (D.C. Cal. 1957), aff'd, 253 F. 2d 547 (9th Cir. 1958), cert. denied, 357 U.S. 920, 78 S. Ct. 1361, 2 L. Ed. 2d 1364: "The Court does not find the case of United States v. Carrollo, D.C., 30 F. Supp. 3, persuasive on this point in view of the conclusion reached by the Supreme Court in Jordan v. De George, supra. The question of fraud as an element of moral turpitude was not reached in the Carrollo case, and the holding that income tax evasion did not involve moral turpitude was no more than a dictum."[4]

---

[3] The court's second sentence reminds us of the following social satire in Act 2 of the 1887 Gilbert and Sullivan opera, *Ruddigore*:
Robin: On Tuesday I made a false income-tax return.
All: Ha! Ha!
1st Ghost: That's nothing.
2nd Ghost: Nothing at all.
3rd Ghost: Everybody does that.
4th Ghost: It's expected of you.

[4] As Lord MacNaghten said in *Reddaway v. Banham,* A.C. 199, 221 (1896): "Fraud is infinite in variety; sometimes it is audacious and unblushing; sometimes it pays a sort of homage to virtue, and then it is modest and retiring; it would be honesty itself if it could only afford it."

The only case cited by appellant that a conviction of willful evasion of payment of income tax is not in itself determinative of conviction of a crime involving moral turpitude is *Brodstein Disbarment Case,* 408 Pa. 84, 182 A. 2d 181 (1962), and then only Justice MUS-MANNO's dissent therein which was an impassioned plea in behalf of an aged attorney who had been disbarred because of income tax evasion. Besides stating mitigating circumstances, Justice MUSMANNO cited *In re Hallinan,* 43 Cal. 2d 243, 272 P. 2d 768 (1954), for the proposition that federal income tax evasion does not necessarily involve moral turpitude and does not justify such a harsh penalty as summary disbarment.[5]

Firstly, in the instant case, a fifteen day suspension, under the circumstances and in light of the power of the State Board of Pharmacy to completely revoke appellant's pharmacist's license (and his pharmacy permit), the "harsh penalty" analogy is not apt. Secondly, as appellant admits, there are numerous authorities to the contrary on the federal income tax evasion point. Among these is *Chanan Din Khan v. Barber, supra,* which says:

"Numerous attempts have been made to define what crimes involve 'moral turpitude' . . . Unquestionably the most helpful definition yet offered was given in the case of Jordan v. De George, supra, 341 U.S. at page 232, 71 S. Ct. at page 708, wherein it was stated:

" 'Whatever else the phrase "crime involving moral turpitude" may mean in peripheral cases, the decided cases make it plain that crimes in which fraud was an ingredient have always been regarded as involving moral turpitude. * * * Fraud is the touchstone by which this case should be judged. The phrase "crime involv-

---

[5] For the final disposition of this same case, *see* 48 Cal. 2d 52, 307 P. 2d 1 (1957).

ing moral turpitude" has without exception been construed to embrace fraudulent conduct.'

"The final question to be resolved is whether a violation of §145(b) of the Internal Revenue Code of 1939 is a crime involving moral turpitude, as that phrase has been defined above by the Supreme Court.

"Section 145(b) speaks in terms of 'wilfulness', which has been defined by the courts as meaning 'bad faith', 'bad purpose', 'evil motive' and 'tax evasion motive,' United States v. Murdock, 290 U.S. 389, 54 S. Ct. 223, 78 L. Ed. 381; Spies v. United States, 317 U.S. 492, 63 S. Ct. 364, 87 L. Ed. 418; Wardlaw v. United States, 5 Cir., 203 F. 2d 884. With these definitions in mind, the Courts have, with apparent unanimity, held that in order for a conviction under §145(b) to stand, the Government is required to prove that the evading taxpayer had a specific intent to evade taxation, *amounting to an intent to defraud the United States*. [Citing many cases] Fraud is so inextricably woven into the term, 'wilfully' as it is employed in §145(b), that it is clearly an ingredient of the offense proscribed by that section. Only by creating unwarranted semantic distinctions could a contrary conclusion be reached.

"[5] Similar tax offenses have been held to involve 'moral turpitude,' Jordan v. De George, supra; United States ex rel. Berlandi v. Reimer, 2 Cir., 113 F. 2d 429; and Maita v. Haff, 9 Cir., 116 F. 2d 337, and the court is of the opinion that the crime set forth in §145(b) squarely falls within the definition of moral turpitude laid down by the Supreme Court in Jordan v. De George, supra. If proof tantamount to a showing of a specific intent to defraud is *required to convict* a man under §145(b), then it cannot be said with any degree of consistency and logic that the crime involves *no fraud* for the purposes of deportation." 147

F. Supp. at 774-775. (Emphasis original) Nor do we feel it can be said with any degree of consistency and logic that income tax evasion involves no fraud for the purposes of suspending a pharmacist's license (or a pharmacy permit).

Greatly persuasive to us is the *Alker Disbarment Case,* 398 Pa. 188, 157 A. 2d 749 (1960), in which our Supreme Court affirmed the Orphans' Court of Philadelphia County on the latter court's opinion. There an attorney was disbarred for "willfully and knowingly attempting to evade and defeat income taxes . . . by filing false and fraudulent tax returns, thereby violating the Internal Revenue Code. . ." The court said that no strict technical rule has ever been adopted in this state as to what constitutes moral turpitude for disbarment purposes, but instead, "Our rule is one of common sense and each case is judged on its own circumstances." But the court said, "Although some courts have concluded that moral turpitude is not necessarily an essential element of prosecution for filing fraudulent returns with intent to cheat the Federal Government of taxes, the weight of authority, and in our opinion the better view, holds to the contrary." 157 A. 2d at 751-752 (the official report does not contain the text of the lower court's opinion but merely refers to the opinion of the court as reported at 16 D. & C. 2d 653).

The opinion then cites *Jordan v. DeGeorge, supra,* and *Chanan Din Khan v. Barber, supra,* and quotes from an article by George D. Haller entitled "Evading Income Taxes: Moral Turpitude?", Michigan State Bar Journal, March, 1958.[6]

---

[6] "* * * All the federal cases agree that where an indictment is brought charging that 145(b) was violated by the filing of a false and fraudulent return, it is an essential element of the government's case, to obtain a conviction that fraud must be proved (Berra v. United States, 351 U.S. 131, 76 S. Ct. 685, 100 L. Ed. 1013; Achilli v. United States, 353 U.S. 373, 77 S. Ct. 995, 1 L. Ed.

(2)   *The pharmacy permit.*   Under Section 5(b) (2) of the Pharmacy Act, was the pharmacy permit of Dante Moretti validly suspended?   We think so.   The most perfunctory reading of the first dozen words of Section 5(b)(2), together with our determination that appellant violated Section 5(a)(2), reveals that the pharmacy permit was validly suspended.

Sections 5(a)(2) and 5(b)(2) in themselves are sufficient to settle this matter, and we find no abuse of discretion or error of law in the State Board of Pharmacy's application of them.

Order affirmed.

DISSENTING OPINION BY JUDGE MANDERINO:

I dissent.   The adjudication and order of the State Board of Pharmacy suspending Moretti's personal pharmacist's license and pharmacy permit for fifteen days should be reversed.

Moretti's license suspension stemmed from his plea of guilty and conviction on a charge of income tax evasion.   From this, the Board and this court conclude that Moretti violated Section 5(a)(2) of the Pharmacy Act (Act of September 27, 1961, P. L. 1700, as amended, 63 P.S. 390-5(a)(2)), which permits the Board to suspend a pharmacist's license if he has been found guilty of "an offense involving moral turpitude." This court concludes that income tax evasion is a crime involving moral turpitude.   I do not agree because the term "moral turpitude" is constitutionally vague and meaningless.

2d 918; United States v. Rosenblum [7 Cir.], 176 F. 2d 321; United States v. Ra[u]b [7 Cir.], 177 F. 2d 312; Merritt [Norwitt] v. United States [9 Cir.], 195 F. 2d 127).

"If thus, the defendant is so charged, fraud is thereby made a part of the crime and resultant conviction seals the content of the offense so as to integrate it within the scope of moral turpitude * * *."

The majority is correct in its observation that moral turpitude is not a new term, but rather one which is old in the law and which has been used for centuries. It is in fact, a term of a by-gone era—a catch-all which has been used to encompass whatever conduct is thought to be particularly reprehensible at any given time. It is a tool by which supposedly impartial tribunals have been permitted to impose moral judgments. The term has generally developed a definition of an act "of baseness, vileness or depravity." This definition is veritably meaningless. What is considered base or vile by one person at one time may not be so considered by another person at another time.

A search of the cases indicates numerous man hours of legal and judicial talent which have been expended for years arguing about the meaning of "moral turpitude". Except in these legal opinions, the term is not a part of today's language. We should put an end once and for all to the wasting of judicial manpower and time attempting to construe a term which says nothing. Legislative enactments can be drawn to accomplish their purposes with much more precision.

In addition to his pharmacist's license, Moretti's pharmacy permit was also suspended. This suspension was based on the fact that one of the pharmacist's in Moretti's employment dispensed generic drugs when a brand name was indicated on a prescription. The Pharmacy Act prohibits the sale of any drug of a brand or trade name other than that specified by the person prescribing (Act of September 27, 1961, P. L. 1700, as amended, 63 P.S. 390-5(a)(8)), and provides for vicarious liability for the holder of a pharmacy permit when one of the pharmacist's in his employ commits the above violation (Act of September 27, 1961, P. L. 1700, as amended, 63 P.S. 390-5(b)(5)).

Even assuming that the above provisions of the Pharmacy Act are valid, it is doubtful that an actual

violation of them occurred. The Act specifically provides that there be no substitution of "a brand or trade name other than that specified by the person *prescribing.*" (Emphasis added). The word "prescription" is defined as follows in the Pharmacy Act: "Prescription means a written or oral order for drugs issued by a duly licensed medical practitioner *in the course of his professional practice.*" (Emphasis added). (Act of September 27, 1961, P. L. 1700, as amended, 63 P.S. 390-2(8)).

In this case, the drugs sold by Moretti's pharmacy, leading to the suspension, were issued by prescriptions written to professional shoppers hired by drug companies to test allegiance to their products. The definition of prescription in the Act implies that a prescription is something issued by a doctor in his treatment of a patient. There was clearly no such treatment in this case. Therefore, there could have been no real prescription and, thus, no violation of the Act.

I would reverse the order of the State Board of Pharmacy suspending for fifteen days Moretti's personal pharmacy license and his pharmacy permit.