Schuman's Village Square Drugs, Inc., Appellant,
*v.* Commonwealth of Pennsylvania, State Board
of Pharmacy, Appellee.

Argued February 4, 1974, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

458

*George M. Painter, III,* for appellant.

*Gerald Gornish,* Deputy Attorney General, with him *Walter Roy Mays, III,* Deputy Attorney General, and *Israel Packel,* Attorney General, for appellee.

OPINION BY JUDGE BLATT, June 4, 1974:

This is an appeal from the adjudication and order of the State Board of Pharmacy (Board) regarding the application of Schuman's Village Square Drugs, Inc. (appellant) for a pharmacy permit.[1] The Board concluded that the appellant had violated several sections of the Pharmacy Act, Act of September 27, 1961, P. L. 1700, 63 P.S. §§390-1 et seq. and, based on the Board's findings of fact and conclusions of law considered separately and independently of each other, the appellant was denied the permit requested.

Our scope of review is limited to a determination of whether or not the Board's adjudication is in violation of the constitutional rights of the appellant, is in accordance with law or includes any finding of fact not supported by substantial evidence. Administrative Agency Law, Act of June 4, 1945, P. L. 1388, 71 P.S. §1710.44.

---

[1] At one time a Pennsylvania statute required that 100% of the stock of corporations operating a pharmacy must be owned by pharmacists. That statute was ruled unconstitutional in *Liggett Co. v. Baldridge,* 278 U.S. 105 (1928). Although the *Liggett* case has been recently overruled by *North Dakota State Board of Pharmacy v. Snyder's Drug Stores, Inc.,* 42 U.S.L.W. 4035 (U.S. Dec. 5, 1973), our Legislature retains a statute which is consistent with the prior decision and which would allow this application.

We believe that the adjudication and order of the Board were proper.

The findings of fact made by the Board were clearly supported by substantial evidence, that is, by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *A. P. Weaver & Sons v. Sanitary Water Board,* 3 Pa. Commonwealth Ct. 499, 284 A. 2d 515 (1971). The testimony reveals that, before any pharmacy permit had been issued to the appellant, prescriptions were dispensed in the Perkasie store, where it had asked permission to operate. The appellant argues that the evidence did not conclusively establish that the prescriptions were filled (in the sense of being "prepared") at the Perkasie store, but contends rather that this store merely served as a distribution center for prescriptions filled at other licensed drug stores and that, therefore, no illegal act was committed which would justify the denial of the permit. This argument was factually rebutted, however, by the testimony of a customer and also by the testimony of an investigator for the Federal Bureau of Narcotics. Moreover, even if the factual assertions of the appellant had been supported, we would still hold that the distribution of drugs is a function of a duly licensed pharmacist and pharmacy properly regulated by the Board under its police powers. In fact, the definition of the "practice of pharmacy" in Section 2(11) of the Pharmacy Act, 63 P.S. §390-2(11), specifically includes the functions of dispensing, as well as of selling, storing and distributing drugs.[2]

---

[2] Section 2 of the Pharmacy Act, 63 P.S. §390-2 defines the following:

"(11) 'Practice of pharmacy' means the practice of that profession concerned with the art and science of preparing, compounding and *dispensing* of drugs and devices, whether dispensed on the prescription of a medical practitioner or legally dispensed or sold directly to the ultimate consumer, *and shall include the proper and*

The conclusions of law in this case are likewise supported by the findings of fact. The Board concluded that the appellant violated Section 4(h) of the Pharmacy Act, 63 P.S. §390-4(h), which provides: "No person shall operate or advertise a pharmacy until the person has been granted a pharmacy permit by the Board."[3] The record shows that two customers testified that they had prescriptions filled at the Perkasie store. Also, a Federal investigator stated that when he visited the store it was open for business and he observed drugs, some of which were controlled substances, on the shelves and prescription counter. The store was evidently operating as a pharmacy in conducting those functions which are exclusively reserved for pharmacies.

The Board also concluded that the appellant violated Section 8(5) of the Pharmacy Act, 63 P.S. §390-8(5), which provides that it shall be unlawful for: "Any person to knowingly prevent or refuse to permit any member of the board, or its duly authorized agents, to enter a pharmacy or any other place where drugs or devices are kept, stored, dispensed or distributed to the ultimate consumer, for the purpose of lawful inspection or other purposes in accordance with the provisions of this act and regulations pursuant thereto." The record shows that on November 8, 1972, John

---

*safe storage and distribution of drugs,* the maintenance of proper records therefor, and the responsibility of relating information as required concerning such drugs and medicines and their therapeutic values and uses in the treatment and prevention of disease: Provided, however, That 'practice of pharmacy' shall not include the operations of a manufacturer or wholesaler as defined in The Drug, Device and Cosmetic Act.

"(12) 'Pharmacy' means every place properly licensed by the Board of Pharmacy where the practice of pharmacy is conducted." (Emphasis added.)

[3] Section 2(1) of the Pharmacy Act, 63 P.S. §390-2(1) defines person as an "individual, partnership, corporation and [or] association."

T. Lydon, an occupational license inspector for the Commonwealth of Pennsylvania, State Department, Commission of Professional and Occupational Affairs, made a routine investigation of the appellant's Perkasie store at the Board's request in connection with the appellant's application for a pharmacy permit. On December 7, 1972, Lydon again visited the Perkasie store and told the pharmacist that he was there to see if any drugs were being dispensed and to do a routine investigation. The pharmacist called the president of the appellant corporation, Isadore Schuman, a duly licensed pharmacist, who instructed him to order Lydon to leave the laboratory. Mr. Schuman and two policemen then came to the store and Schuman stated that his attorney wanted the investigator arrested. Because he was ordered by Schuman to leave the laboratory, Lydon was unable either to inspect the records to see if any prescriptions were being filled or otherwise to complete his investigation.

The Board further concluded that the appellant violated the proscription of Section 8(8) of the Pharmacy Act, 63 P.S. §390-8(8) which prohibits, in part: "[A]ny person to conduct or transact business under a name which contains as part thereof the words 'drug store', 'pharmacy', 'drugs', 'medicine store', 'medicines', 'drug ship', 'apothecary', or any term having a similar meaning, or in any manner by advertisement, display of show globes or otherwise describe or refer to the place of the conducted business or person, unless the place is a pharmacy duly licensed by the State Board of Pharmacy." Besides the testimony of the aforementioned witnesses which evidenced that a business was being conducted, the exhibits produced at the hearings before the Board supplied proof of the second element of this violation, i.e., the transaction of business under a name containing "drugs." The exhibits include: (1) two paper bags which bear the inscription "Schuman's Drugs" (in

which the two customer witnesses received their goods);
(2) two printed receipts with the heading "Schuman's
Discount Drug's Store #9"; and (3) a bottle of "St.
Isidore Kiddie Aspirin" which was bought at the Per-
kasie store, the label of which reads "Packaged Express-
ly for (then in larger printing) *Schuman's Drugs* King
of the Discounters, Lansdale, Pa. 19446."

The Board also found that the appellant violated
Section 4(b) of the Pharmacy Act, 63 P.S. §390-4(b),
which reads as follows: "All applicants shall be of
good moral and professional character: in determin-
ing this qualification, the board may take into consid-
eration among other things the conduct and operation
of other pharmacies conducted by said applicant."
We agree with the appellant that the Board received
no direct evidence which would reflect negatively on
the appellant's "moral character"[4] (in its common in-
terpretation) or specifically that of its officers.[5] How-
ever, the proven violations of the Pharmacy Act clearly
exhibit behavior which is contrary to the proper pro-
fessional conduct established by the Legislature and
made known to the appellant and we believe the Board
can look to such behavior to determine good or bad pro-
fessional character as they did here.

The appellant finally contends that the Board acted
in an "arbitrary, capricious, unreasonable, and biased
manner" in the conduct of its proceedings and in the

---

[4] We find it unnecessary for the determination of this case to
interpret the term "moral character" or to decide whether any vio-
lations of the Pharmacy Act are evidence of immoral character
*per se.* See our opinion in *Moretti v. State Board of Pharmacy*, 2
Pa. Commonwealth Ct. 121, 277 A. 2d 516 (1971), for a discussion
of the definition of "moral turpitude."

[5] The responsibility for professional misconduct and the lia-
bility of the owner-association and its officers for negligence was
discussed in *State Board of Pharmacy v. C. L. C. Pharmacy (No.
2)*, 88 Dauph. 308 (1967).

denial of the permit. Although this issue was not raised before the Board, we feel compelled to at least comment on the assertion. When the Board conducted informal hearings to investigate complaints about the Perkasie store, inflammatory comments were made by the Chairman of the Board which were deemed "unfortunate," even in the euphemistic terminology of the Commonwealth's brief. We merely caution that temperance and judicial restraint are required if the Board is to maintain the respect which a professional board deserves and if the proper judicial atmosphere is to exist. We note, however, that the Chairman, apparently realizing the negative impression that his conduct might reflect on the decision, properly disqualified himself from the formal hearing and it was conducted in the proper judicial atmosphere which safeguarded the rights of the appellant.

In its decision the Board stated that it would consider a reapplication for a permit after pending criminal proceedings against the appellant have been resolved. The existence of the criminal proceeding was regarded as independent of the developed facts before the Board but, due to the pendency thereof, the attorney for Isadore Schuman advised him not to testify.[6] The Board was faced, therefore, with uncontradicted evidence presented by the Commonwealth upon which it justifiably based its findings.

In conclusion, it is clear that when an applicant has not complied with the requirements of the Pharmacy Act and has in fact violated certain proscriptions, the Board may deny the issuance of a permit. Herein the duly constituted Board, acting in a proper manner,

---

[6] *Compare Rosenthal v. Board of Pharmacy*, 3 Pa. Commonwealth Ct. 621, 284 A. 2d 846 (1971), where the appellant similarly refused to testify because of a pending criminal proceeding but was deemed to have been afforded his constitutional rights and proper hearing.

made findings of fact based on substantial evidence and clearly set out in its adjudication the conclusions of law based thereon. We, therefore, affirm by the following

### ORDER

Now, June 4, 1974, the adjudication and order of the State Board of Pharmacy denying the issuance of a pharmacy permit to Schuman's Village Square Drugs, Inc. is hereby affirmed.