400 A.2d 1317
COMMONWEALTH of Pennsylvania, LIQUOR CONTROL BOARD

v.

RONNIE'S LOUNGE, INC., t/d/b/a the Scoreboard Lounge, Appellant.

Supreme Court of Pennsylvania.

Submitted March 6, 1979.

Decided May 4, 1979.

Vincent Murovich, Jr., Pittsburgh, for appellant.

J. Leonard Langan, Asst. Atty. Gen., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

PER CURIAM.

The appeal is dismissed as improvidently granted.

MANDERINO, J., files a dissenting opinion.

MANDERINO, Justice, dissenting.

This Court granted appellant's, Ronnie's Lounge, Inc.'s, petition for allowance of appeal because serious questions

were raised in that petition. I cannot agree with the majority that the petition was improvidently granted.

Appellant's liquor license was revoked pursuant to statutory authorization because 1) it had permitted "lewd, immoral or improper entertainment" on the premises and 2) it permitted entertainers to "contact or associate with patrons" on the premises. The revocation by appellee, Pennsylvania Liquor Control Board, was upheld by the Court of Common Pleas and by the Commonwealth Court.

The revocation was based on evidence that during the show on the premises, scantily clad females (G strings and transparent pasties) performed in a lewd, immoral, and improper manner and between shows conversed with patrons. Appellant contends that 1) the facts do not support a finding of lewd, immoral and improper conduct; 2) there was no evidence that conversation took place with patrons; and 3) opinion evidence concerning what constitutes immoral conduct was improperly admitted.

I have previously had occasion to speak to the use of words such as "lewd" and "immoral" as legal standards. This case adds another unconstitutional standard—"improper."

In attempting to classify the conduct in this case as "lewd," the

"majority in effect creates a fiction. It discovers a standard which it says renders the current statute legitimate, but the standard is just as vague as the statute. 'Gross and open indecency'? What is that? 'Morals of the community'? Vaguer yet! The result of the majority's analysis is that a vague statute, one which gives no reasonable notice of the prohibitive conduct, is held constitutional through the application of a vague common law standard, which gave no reasonable notice of the prohibitive conduct." *Commonwealth v. Heinbaugh*, 467 Pa. 1, 11, 354 A.2d 244, 248 (1976) (Manderino, J., dissenting).

Furthermore, the terms used in the statute and adopted by the majority are vague under standards set by the United States Supreme Court.

"Surely, if the word *obscene* is constitutionally vague the word *lewd* must be struck down for the same reasons. *See Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). A statute, vague when adopted, may be upheld as constitutional when, between the time of its enactment and the time of a constitutional challenge for vagueness, the statute has acquired, as a result of judicial decisions, a well-settled construction which has cured the defect of vagueness. *See Miller v. California, supra* ; *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972). The majority in this case, however, has not construed the word lewd in the light of any past judicial decisions which can be said to have converted that which was vague in the beginning to that which is now clear." (Emphasis in original.) *Commonwealth v. Heinbaugh, supra*, (Manderino, J., dissenting).

The term "immoral" like the word "moral turpitude" is really so vague that it is meaningless. Both are terms which have been used for centuries and what I previously have pointed out concerning the latter equally applies to the former.

"It is in fact, a term of a by-gone era—a catch-all which has been used to encompass whatever conduct is thought to be particularly reprehensible at any given time. It is a tool by which supposedly impartial tribunals have been permitted to impose moral judgments. The term has generally developed a definition of an act 'of baseness, vileness or depravity.' This definition is veritably meaningless. What is considered base or vile by one person at one time may not be so considered by another person at another time.

A search of the cases indicates numerous man hours of legal and judicial talent which have been expended for years arguing about the meaning of 'moral turpitude'. Except in these legal opinions, the term is not a part of today's language. We should put an end once and for all

to the wasting of judicial manpower and time attempting to construe a term which says nothing. Legislative enactments can be drawn to accomplish their purposes with much more precision." *Moretti v. State Board of Pharmacy*, 2 Pa.Cmwlth. 121, 131, 277 A.2d 516, 520 (1971) (Manderino, J., dissenting).

In this case appellant does not specifically raise constitutional issues but the elusiveness of terms such as "lewd," "immoral," or "improper" provides strong support for appellant's argument that the facts do not support the conclusions of "lewd, immoral, or improper entertainment." If the majority is going to apply private notions of moral beliefs then it is in order to observe that there are those whose private notions consider the selling and consumption of liquor as "lewd," "immoral," and "improper."

In addition, there is absolutely no basis for the conclusion that the entertainer violated the law by talking with other people present. There is no evidence of swindling or dishonesty. There is no evidence that those to whom the entertainer were talking were patrons; proof must be beyond a reasonable doubt. Moreover, the utter, absolute, and frustrating absurdity of the meaning given to the statute by the majority means that Frank Sinatra, Ella Fitzgerald, Elton John, Linda Ronstadt, and Gypsy Rose Lee could cause the closing of a nightclub by talking with patrons. Absolutely incredible! The legislature may pass such laws but we need not be a party to any game of statutory charades.

I should like to write more, but I need time to relax, I have an interesting essay to read about "Elvis the Pelvis" and his allegedly obscene gyrations, following which there is some interesting TV fare involving scantily clad females who reportedly (from TV previews) will be doing some interesting bumps and grinds—not however supported by any liquor commercials which we all *know* are "lewd, immoral and improper" (I may even have a beer while being so occupied).