William P. Flickinger, D.C., Petitioner *v.* Commonwealth of Pennsylvania, Department of State et al., Respondents.

148

Submitted on briefs, September 17, 1981, to Judges MENCER, WILLIAMS, JR. and PALLADINO, sitting as a panel of three.

*William R. Balaban, Balaban and Balaban,* for petitioner.

*John J. Flynn,* Counsel, with him, *James J. Kutz,* Chief Counsel and *David F. Phifer,* General Counsel, for respondents.

OPINION BY JUDGE WILLIAMS, JR., January 18, 1982:

This is an appeal by Dr. William P. Flickinger, a chiropractor, from the 60-day suspension of his professional license by the State Board of Chiropractic Examiners (Board). The doctor's suspension followed his having pled guilty to certain offenses under the Pennsylvania Crimes Code.[1]

Dr. Flickinger was licensed as a chiropractor in 1959. On September 12, 1977, he pled guilty, in the Court of Common Pleas of McKean County, to 26 counts of Theft by Deception[2] and 26 counts of Tampering with Public Records.[3] Dr. Flickinger had initially been charged with 160 such counts. Each count alleged that the doctor had submitted to the state Department of Public Welfare a payment invoice for the treatment of a welfare patient, representing on the invoice that he had rendered such treatment on a given date. Each count further alleged that the doctor had, pursuant to the invoices, received payment from the Department of Public Welfare, when in fact he had not rendered treatment on the dates represented. The payments in question totalled $960.

As a result of his guilty plea, Dr. Flickinger was placed on probation for 2 years, conditioned upon his paying the costs of prosecution and making restitution to the state in the amount of $960.

In December 1977, the Board served the doctor with a citation and notice of hearing, directing him to appear before the Board and show cause why his chiropractor's license should not be suspended or revoked. The citation alleged the guilty plea and stated that the doctor's license was subject to suspension or

---

[1] 18 Pa. C. S. §§101 *et seq.*

[2] 18 Pa. C. S. §3922.

[3] 18 Pa. C. S. §4911.

revocation by force of Sections 16(3) and 16(4) of the Chiropractic Registration Act of 1951 (Act).[4]

Section 16 of the Act reads in part as follows:

The board, by a majority vote thereof, may refuse to grant and may suspend or revoke a license or a registration to any applicant for the following reasons:

(3) Pleading guilty or nolo contendere to, or being found guilty by a court of competent jurisdiction of, a crime involving moral turpitude.

(4) Gross incompetency, negligence or misconduct in carrying on of such profession.

In January 1978, the Board held a hearing of the matter, at which Dr. Flickinger appeared without counsel. The attorney for the Commonwealth entered in evidence the certified record of the doctor's guilty plea. Thereafter, the doctor gave evidence in his own behalf. On May 5, 1980, the Board entered an order suspending the doctor's license for 60 days; from that order the instant appeal followed.

In suspending Dr. Flickinger's license the Board based its action on Section 16(3) of the Act, concluding that the offenses to which he pled guilty were one's involving moral turpitude. The Board also concluded that the doctor's conduct which gave rise to the criminal charges reflected "gross negligence, misconduct and incompetency in the practice of this profession," as to create a basis for suspension under Section 16(4) of the Act.

This Court has defined "moral turpitude" to include conduct that is contrary to honesty. *Yurick v. Board of Osteopathic Examiners*, 43 Pa. Common-

---

[4] Act of August 10, 1951, P.L. 1182, *as amended*, 63 P.S. §§616 (3), (4).

wealth Ct. 248, 402 A.2d 290 (1979); *Moretti v. State Board of Pharmacy*, 2 Pa. Commonwealth Ct. 121, 277 A.2d 516 (1971). The crimes to which Dr. Flickinger pled guilty were crimes of dishonesty and thus involved "moral turpitude." It follows, then, that the doctor's guilty plea gave the Board of Chiropractic Examiners discretionary power to revoke or suspend his license, pursuant to Section 16(3) of the Act. Section 16(3), independently of 16(4), provides a legal basis for the suspension in this case.

The appellant first asserts that his license should not be suspended because the misconduct to which he pled guilty did not involve a "doctor-patient relationship," and thus did not relate to the practice of his profession. We must conclude, however, that the offenses to which the doctor pled guilty did relate to the practice of his profession; because he obtained the improper payments by exploitation of his professional position. *See Derrick v. Department of State, Bureau of Professional and Occupational Affairs*, 60 Pa. Commonwealth Ct. 543, 432 A.2d 282 (1981).[5]

Dr. Flickinger next argues that he did not knowingly and intelligently waive his right to counsel in the proceedings before the Board. We find this contention to be meritless. The citation and notice of hearing advised the doctor of the nature of the proceedings and of his right to counsel. Furthermore, at the hearing before the Board and prior to the reception of any evidence, the doctor was again advised of the nature of the proceedings, again advised of his right to counsel, and at least twice asked if he wished to waive counsel. The doctor twice answered that he would proceed without counsel.

---

[5] This, it seems, would also create a separate basis for suspension under Section 16(4) of the Act, being misconduct in the "carrying on" of the profession.

Equally meritless is the doctor's contention that the Board refused to entertain the evidence he offered in mitigation. This contention is contradicted by the record. The record shows that the Board received such evidence, even over objection by the attorney for the Commonwealth. Moreover, the Board's adjudication expressly states that such evidence was considered.

The appellant's remaining argument is that his suspension should be barred by laches, directing our attention to the length of time that elapsed between the completion of the Board's hearing and the order of suspension. In this regard, the doctor contends that, because of the length of time it took for the Board to render a decision, he assumed that the charges had been "dropped". Based on this alleged assumption, the doctor further contends, he felt free to re-establish his practice in another community, which he proceeded to do. This argument must fail, also.

The claim of laches requires more than the mere passage of time; the delay must cause some harm or prejudice to the party asserting it. *E.g., Ullo v. State Board of Nurse Examiners,* 41 Pa. Commonwealth Ct. 204, 398 A.2d 764 (1979). The instant case is not one in which the delay in question anteceded the suspension proceedings; so it cannot be asserted that the delay here complained of affected the doctor's defense of himself in the proceedings. As for Dr. Flickinger's alleged assumption that the Board's charges had been "dropped," there is nothing in this case that warranted any such assumption.

By pleading guilty to Theft by Deception and Tampering with Public Records, the appellant subjected himself to the Board's discretionary power to suspend his license. In the absence of a manifest and flagrant abuse of that discretion, we cannot reverse the Board's

exercise of it. *E.g., Blumenschein v. Pittsburgh Housing Authority*, 379 Pa. 566, 109 A.2d 331 (1954).

For the reasons set forth, we affirm the order suspending the appellant's license.

ORDER

AND Now, the 18th day of January, 1982, the order of the State Board of Chiropractic Examiners suspending the license of William P. Flickinger, D.C., is affirmed.

This decision was reached prior to the expiration of the term of office of Judge PALLADINO.