Joseph F. **GOMBACH**, Petitioner,

v.

**DEPARTMENT of State, BUREAU OF COMMISSIONS, ELECTIONS & LEGISLATION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 13, 1997.

Decided April 14, 1997.

As Amended April 16, 1997.

---

Charles I. Himmelreich, Harrison City, for petitioner.

Peter D. Kovach, Harrisburg, for respondent.

Before McGINLEY and FLAHERTY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

The primary issues raised in this appeal are (1) whether the provision in Section 5 of The Notary Public Law[1] (NPL) that requires a notary applicant to be of "good moral character" is unconstitutionally vague and (2) whether the rejection of Joseph Gombach's (Gombach) notary application constituted cruel and unusual punishment.

Gombach appeals an order of the Secretary of the Commonwealth (Secretary) rejecting his application to be recommissioned as a notary public. We affirm.

---

1. Act of August 21, 1953, P.L. 1323, *as amended,* 57 P.S. § 151.

Gombach was first commissioned as a notary public in 1988. At the end of his first four-year commission in 1992, he reapplied and was recommissioned. Because this second commission was due to expire on March 14, 1996, Gombach again applied for recommission in December of 1995. Gombach's application included a copy of a conviction record that showed Gombach was charged in 1989 with income tax evasion under 26 U.S.C. § 7201. The conviction record also showed that in 1993 Gombach pled guilty to one count of income tax evasion and was sentenced to six days incarceration, six months home confinement, three years probation and a $5,000 fine. Therefore, when Gombach applied for recommission in December of 1995, he was still on probation.

The Department of State, Bureau of Professional and Occupational Affairs (Department) informed Gombach that his conviction would provide the Secretary with good cause to reject his notary application. However, Gombach did not withdraw his application. An Order to Show Cause was issued on February 12, 1996, and an Answer was filed on February 23, 1996. A hearing was then conducted on April 26, 1996 before the Secretary's designee.

The evidence presented at the hearing confirmed the information in Gombach's conviction record. No evidence was presented, however, to indicate that Gombach ever acted improperly in his capacity as a notary. As part of his case, Gombach presented a character witness and five letters from members of his community indicating that Gombach's notary services were important to their community. On June 12, 1996, the Secretary issued an Adjudication and Order rejecting Gombach's application for a notary commission. This appeal followed.[2]

Gombach argues that Section 5 of the NPL is unconstitutionally vague in violation of the due process protections inherent in Article 1, Section 1 of the Pennsylvania Constitution.[3] Section 5 of the NPL provides in pertinent part:

> Before issuing to any applicant a commission as notary public, the Secretary of the Commonwealth shall satisfy himself that the applicant is of *good moral character,* .... Such qualifying requirements may be waived in the case of reappointment or appointments of persons making application within six (6) months after the expiration of a previous term as notary public. ...

57 P.S. § 151 (emphasis added).[4] There is no dispute that the General Assembly did not include a definition of "good moral character" in its enactment of the NPL. Hence, Gombach asserts that the definition of good moral character is left to the unfettered discretion of the Secretary. Without a specific definition, Gombach contends that he had no way of knowing what conduct was prohibited in his capacity as a notary public. Thus, Gombach's argument is that he was not given proper notice as required by due process.

The right to due process of the law is equally applicable to administrative agencies as it is to judicial proceedings. The fundamental requirements of due process are

---

**2.** Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704.

**3.** Article 1, Section 1 of the Pennsylvania Constitution provides that: "[a]ll men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." PA. CONST. art. I, § 1. The right to due process emanates from this section of Pennsylvania's Constitution. *Pennsylvania Game Commission v. Marich,* 542 Pa. 226 n. 4, 666 A.2d 253 n. 4 (1995).

**4.** Gombach argues that the Secretary should not have considered the issue of good moral character because Section 5 permits a waiver when reappointing notaries public. This argument, however, ignores the express language of Section 5 that the Secretary "may" waive the requirement of good moral character. Gombach also argues that the character requirement was waived because he was previously reappointed in 1992 even though criminal charges were pending against him. However, this argument is also without merit because the notary application only asks the applicant for criminal convictions. Thus, Gombach's application would not show any convictions because he was not convicted of income tax evasion until 1993.

notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Fiore v. Board of Finance and Revenue*, 534 Pa. 511, 633 A.2d 1111 (1993). Procedural due process requires that the individual be given adequate information with which to prepare a defense. *Straw v. Pennsylvania Human Relations Commission*, 10 Pa. Cmwlth. 99, 308 A.2d 619 (1973). For notice to be adequate, it must at the very least contain a sufficient listing and explanation of any charges against the individual. *McClelland v. State Civil Service Commission*, 14 Pa.Cmwlth. 339, 322 A.2d 133 (1974).

The Order to Show Cause issued by the Department in this case specifically alleged that Gombach's guilty plea to income tax evasion indicated that he did not possess sufficient good moral character to hold a notary commission. The Order also referred to Gombach's conviction record and to Section 5 of the NPL. The record shows that Gombach was represented by counsel at the administrative hearing and that Gombach testified as to the events underlying his guilty plea. Gombach also presented a character witness who testified as to whether she believed Gombach was of good moral character. Further, Gombach offered letters of reference from five members of his community. Thus, the record shows that Gombach was able to prepare a defense to the allegation in the Order.

■ This was not a situation where Gombach was simply told that he lacked good moral character. In such a situation, we believe notice would have been inadequate. Rather, Gombach was fully informed of the charges against him and the statutory section involved. Moreover, the Secretary acted in conformity with the procedures required by the Administrative Agency Law, 2 Pa.C.S. §§ 501–508, 701–704. Under the facts presented, we believe that Gombach received the minimum protection required under due process of law.

Although Gombach was afforded notice and a meaningful opportunity to be heard, he asserts that notice was inadequate because he was forced to speculate as to the meaning of good moral character, which the Secretary did not define until after the hearing. Gombach argues that this lack of a predetermined definition renders Section 5 unconstitutionally vague.

■ "A law is void on its face if it is so vague that persons 'of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Fabio v. Civil Service Commission*, 489 Pa. 309, 314, 414 A.2d 82, 84 (1980) (citation omitted). However, legislation will be presumed constitutional unless it "clearly, palpably and plainly" violates the constitution. *American Booksellers Association, Inc. v. Rendell*, 332 Pa. Superior Ct. 537, 481 A.2d 919 (1984). A law that may appear vague on its face "may withstand a constitutional challenge if it has been narrowed by judicial interpretation, custom and usage." *Fabio*, 489 Pa. at 315, 414 A.2d at 85. Moreover, it is our obligation to adopt a reasonable construction which will save the constitutionality of a statute. *Atlantic–Inland, Inc. v. Board of Supervisors of West Goshen Township*, 48 Pa.Cmwlth. 397, 410 A.2d 380 (1980).

■ Although good moral character was not defined by the General Assembly, we agree with the Department that the phrase has been made constitutionally certain by our courts in terms of a person lacking "moral turpitude." Good moral character is defined, in part, as including "an absence of proven conduct or acts which have been historically considered as manifestation of moral turpitude." BLACK'S LAW DICTIONARY, 693 (6th ed.1990). Our courts have defined moral turpitude as "'anything done knowingly contrary to justice, honesty or good morals.'" *Foose v. State Board of Vehicle Manufacturers, Dealers and Salespersons*, 135 Pa. Cmwlth. 62, 578 A.2d 1355 (1990) (quoting *Moretti v. State Board of Pharmacy*, 2 Pa. Cmwlth. 121, 277 A.2d 516 (1971)). From these definitions it is apparent that the two phrases, good moral character and moral turpitude, are often used together or to define each other.

In *Moretti*, this Court considered whether the crime of income tax evasion constituted a crime involving "moral turpitude" under Sec-

tion 5(a)(2) of the Pharmacy Act.[5] We determined that "[a]s a general rule, all crimes of which fraud is an element are looked on as involving moral turpitude." *Id.* 277 A.2d at 518 (citing *Jordan v. DeGeorge*, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886 (1951)). We also noted that the crime of income tax evasion required the Government to show that the taxpayer had a specific intent to evade taxation, which amounted to an intent to defraud the United States. Because fraud was an integral part of income tax evasion, we held that income tax evasion was a crime of moral turpitude.

Based on *Foose* and *Moretti*, we hold that good moral character has been sufficiently defined by "judicial interpretation, custom and usage" so as to survive constitutional challenge. If a person has committed an act of moral turpitude, it may be determined whether that person is of good moral character. Also, we find that the Secretary's use of the definition of "character" from Black's Law Dictionary was appropriate because the word "character" is itself an integral part of the phrase "good moral character." [6] For Gombach to argue that he did not have notice that good moral character would be defined in terms of character ignores the plain language of Section 5. We hold that Section 5 of the NPL is not unconstitutionally vague because defining good moral character in terms of a person lacking moral turpitude is a reasonable construction of Section 5.

Gombach's second contention is that the Secretary's rejection of his notary public application constituted cruel and unusual punishment in violation of Article 1, Section 13 of the Pennsylvania Constitution.[7] Gombach asserts that it is cruel and unusual punishment for the Secretary to revoke his notary commission for an unspecified period of time.

Gombach argues that the Secretary has, in effect, sentenced him to a life sentence of bad moral character.[8]

Generally, the constitutional limitation against cruel and unusual punishment applies only in criminal cases. *Moeslein v. State Board of Pharmacy*, 60 Pa.Cmwlth. 574, 432 A.2d 295 (1981). However, the Pennsylvania Supreme Court has held that the principle embodied in the constitutional limitation against cruel and unusual punishment is applicable to all proceedings. *Scranton City v. Peoples Coal Co.*, 274 Pa. 63, 117 A. 673 (1922). Although the cruel and unusual punishment "principle" applies to all proceedings, its application in civil cases "occurs only when the issue to be determined is whether an abuse of discretion has taken place." *Drogowski v. Commonwealth*, 94 Pa. Cmwlth. 205, 503 A.2d 104, 106 (1986). Because Section 5 of the NPL gives the Secretary the discretion to either accept or reject a notary application, we must determine whether an abuse of discretion occurred in violation of the cruel and unusual punishment principle.

After a review of the record in this case, we find no abuse of discretion by the Secretary. Gombach's notary application for recommission included a copy of his conviction record for income tax evasion. Under Section 5 of the NPL, the Secretary was required to determine whether Gombach's conviction showed that he did not possess good moral character. In making this determination, the Secretary reviewed the evidence presented at the hearing, which included Gombach's admission and his conviction record. The Secretary noted that notaries use an official notary seal to authenticate various acts, instruments and attestations.

---

**5.** Act of September 27, 1961, P.L. 1700, *as amended*, 63 P.S. § 390–5(a)(2).

**6.** We also note that the Secretary is permitted to interpret the intention of the legislature when the words of the Act are not explicit. Section 21(c)(8) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(c)(8).

**7.** Article 1, Section 13 of the Pennsylvania Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor

cruel punishments inflicted." PA. CONST. art. I, § 13.

**8.** Gombach also points out that the Secretary cited Section 3 rather than Section 5 in the Discussion section of the Adjudication and Order. However, we find that this error was de minimis because Section 5 was cited elsewhere throughout the Adjudication and Order. Also, the Department's Order to Show Cause provided adequate notice to Gombach that his conviction could disqualify him under Section 5.

When something is notarized, the notary is essentially telling the public and the courts that the document is credible and authentic. The Secretary also determined that a notary commission notifies the public that the Commonwealth believes the notary can be trusted to act properly.

Based on these observations and the evidence presented, the Secretary rejected Gombach's application because Gombach's conviction for income tax evasion raised serious doubts as to his honesty and integrity. Our review of the record reveals that the Secretary acted in conformity with the NPL and that the rejection of Gombach's notary application was not inappropriately harsh. Any other conclusion by the Secretary would be suspect in light of the fact that a conviction for income tax evasion certainly suggests that Gombach is not worthy of occupying a position of public trust. Moreover, the Secretary was not required by the NPL to provide Gombach with a date certain for successful reapplication. Common sense dictates that it would be unreasonable to force the Secretary to speculate as to when an applicant may reacquire good moral character status. *The NPL does not, however, preclude Gombach from reapplying at a later date.* The success of that later application will again depend on whether Gombach can show that he possesses good moral character.

Accordingly, we affirm the order of the Secretary.

### ORDER

AND NOW, this 14th day of April, 1997, the order of the Secretary of the Commonwealth in the above-captioned matter is hereby affirmed.