Atlantic-Inland, Inc., Appellant *v.* The Board of Supervisors of West Goshen Township and Township of West Goshen, Appellees.

Argued October 5, 1979, before Judges ROGERS, BLATT and CRAIG, sitting as a panel of three.

*Howard Wallner,* for appellant.

*Ronald C. Nagle,* with him, *Buckley, Nagle & Mc-Guire,* for appellees.

OPINION BY JUDGE BLATT, January 10, 1980:

Atlantic-Inland, Inc. (appellant) appeals from an order of the Court of Common Pleas of Chester County dismissing its complaint in equity and mandamus against West Goshen Township (Township).[1]

In 1974, the West Goshen Township Board of Supervisors (Board of Supervisors) passed an ordinance known as the West Goshen Township Electrical Code (Code), which establishes a system for the inspection of certain electrical work done within the Township. It provided in part as follows:

> Approved Electrical Inspection Agency— shall mean the Middle Department Association of Fire Underwriter[s], the Middle Atlantic Electrical Inspection, Incorporated and such other electrical inspecting agency or agencies which shall hereafter be approved by resolution of the Board of Township Supervisors.

Section 3(b) of the Code.

As to the method of approval, it provided:

> The Building Inspector shall not accept any Certificate of Inspection from an inspecting agency which has not been approved by reso-

[1] It seems to us that the proper procedure for prosecuting this type of matter is established by the Local Agency Law, 2 Pa. C.S. §551 et seq., which was not followed here. The parties, however, have not raised this issue, and therefore, we do not address it.

lution of the Board of Supervisors who will investigate the qualifications, method of operation, completeness of inspectional activity, amount of insurance coverage, and type of report before approving such agency.

Section 6(d) of the Code.

Following the enactment of the ordinance, the appellant applied for approval as an electrical inspection agency, but the Township denied the application, explaining in a letter to the appellant that it was "quite satisfied with the present inspection agencies doing electrical inspection for this Township." The appellant thereupon filed a complaint in the county court of common pleas seeking a declaration that the ordinance, on its face and as applied, was unconstitutional or, in the alternative, that a writ of mandamus be issued directing the Township to approve the appellant as an electrical inspector.

On the record then developed before the court below, the court found that the actual reason for the appellant's rejection was its record of defective inspections and its failure to follow reporting procedures. As to the constitutionality of the ordinance, the court determined that it was a valid exercise of the Township's police power, holding that the designation of two approved agencies was not a denial of substantive due process or equal protection and that the method of approval was not so vague as to violate procedural due process. In addition, the court ruled that a writ of mandamus was inappropriate because approval here was a discretionary matter and the Township had not abused its discretion.

The appellant now raises two constitutional issues. It argues first that the designation of two agencies as not requiring approval violates the principle of equal protection and Article III, Section 32 of the

Pennsylvania Constitution, which prohibits special legislation "'[r]egulating labor, trade, mining or manufacturing". Secondly, it argues that the standards for agencies seeking approval are so vague as to constitute a violation of due process.[2] The appellant does not explicitly address the issue of mandamus.

As to the appellant's due process argument, we are unable to agree that the standards governing approval in Section 6(d) of the Code are so vague as to render them unconstitutional. The ordinance clearly suggests that, upon application by an inspection agency, the Board of Supervisors will "investigate the qualifications, method of operation, completeness of insurance coverage, and types of report before approving such agency." Section 6(d) of the Code. The ordinance thus establishes a number of areas into which the Township may inquire in determining whether or not an agency is competent to conduct electrical inspections. The appellant argues that the ordinance does not establish any specific criteria that must be met for approval and that the Township need not approve anyone, so that the absence of explicit guidelines may result in arbitrary and discriminatory approval decisions by the Township. We believe, however, that the appropriate standard to be applied here is suggested in *Dixon v. Pennsylvania Crime Commission*, 347 F. Supp. 138, 144 (E.D. Pa. 1972):

> A statute is not unconstitutionally vague merely because clearer and more precise language could have been used; it is sufficient if it contains general principles to be followed and

---

[2] The appellant also suggests that it was denied due process because its application was rejected on the advice of the Township Building Inspector and was never actually considered by the Board of Supervisors. This issue was not raised below, however, and we shall not consider it on appeal.

leaves the details of ministerial acts in the hands of those charged with the duty of administering the statute.

Applying this criterion and considering our obligation to adopt a reasonable construction which will save the constitutionality of the ordinance, *Kadash v. City of Williamsport,* 19 Pa. Commonwealth Ct. 643, 340 A.2d 617 (1975), we conclude that the ordinance is specific enough to prevent the arbitrary and discriminatory exercise of power.

While it is true that the reference to "qualifications" in Section 6(d) of the Code may seem abstract and redundant, we believe that a reasonable reading of the ordinance indicates that an inspection agency is entitled to approval if its method of operation is consistent with accepted industry standards, its inspections are complete, its insurance coverage is adequate, and its inspection reports are sufficient and accurate. Undeniably, the Board of Supervisors may exercise discretion in evaluating the evidence developed by its investigation, but so long as it is guided by the considerations expressed in the ordinance, that discretion is sufficiently limited.

In addition, we must note that the Township's decision is subject to judicial review and must be supported by substantial evidence. In the present case, the record contains substantial evidence that the appellant made improper inspections and reports, and we believe therefore that the Township's refusal to approve the appellant was within its discretion. Accordingly, the court's refusal to issue mandamus was proper, for mandamus will not lie to control the exercise of discretion unless the defendant's action is so arbitrary as to be no exercise of discretion at all. *Phillips v. Neville Township,* 23 Pa. Commonwealth Ct. 274, 351 A.2d 314 (1976). Further, although the letter indicating the Township's decision offered a

legally insufficient reason for refusing to approve the appellant, we agree with the court below that it was not bound to accept the wording of the letter when other evidence of record established that the actual reason for denying approval was legally sufficient.

Finally, while we are inclined to agree with the appellant's characterization of Section 3(b) of the Code, which names two agencies as not requiring approval,[3] we need not and shall not address the constitutionality of this provision. As we have said in the past, a court will not consider a constitutional issue unless it is clearly necessary to do so to dispose of the case before it. *Hostetter v. Department of Transportation, Bureau of Traffic Safety,* 10 Pa. Commonwealth Ct. 228, 309 A.2d 600 (1973). Here, were we to find this designation unconstitutional, we would be required, under the severability clause of the ordinance, to strike only the reference to the named agencies. The ordinance would then require all inspection agencies to seek approval on an equal footing, and the appellant would consequently be left in the same position it is now. That is, it would not be entitled to automatic approval but would still have to petition for approval by the Board of Supervisors. Its cause would not be advanced in any way.

We shall therefore affirm.

### Order

And Now, this 10th day of January, 1980, the order of the Court of Common Pleas of Chester County in the above-captioned case, dismissing the excep-

---

[3] *See State Board of Chiropractic Examiners v. Life Fellowship of Pennsylvania,* 441 Pa. 293, 272 A.2d 478 (1971) (applying Pa. Const. art. III, §32) ; *Francis v. Neville Township,* 372 Pa. 77, 92 A.2d 892 (1952) (invalidating ordinance as special legislation) ; *Commonwealth v. Mervis,* 55 Pa. Superior Ct. 178 (1913) (applying equal protection principles).

tions of Atlantic-Inland, Inc., and entering judgment on its decree nisi, is hereby affirmed.

This decision was reached prior to the expiration of the term of office of Judge DiSalle.

------

Dissenting Opinion by Judge Craig:

I must respectfully dissent. The township has pre-ordained appellant's competitors as approved agencies, but has refused even to act upon appellant's application for approval. The township has proceeded in an arbitrary and discriminatory manner.

Section 3(b) of the ordinance is the section which pre-named the two competitors as approved. Appellant was left only with a hope of being one of the "agencies which shall hereafter be approved by resolution of the Board of Supervisors" (board). Section 6(d) directs the board to "investigate the qualifications, method of operation, completeness of insurance coverage, and type of report before approving such agency." No other provisions of the ordinance address the approval of agencies, and the court below found that "the Board has not published or otherwise promulgated any rules, regulations, requirements or criteria governing approval."

Appellant tried to apply for designation as an approved agency. By letter of July 17, 1974, the assistant township manager informed appellant that its request was denied, his letter stating:

> We have received your petition for acceptance as an Electrical Inspector for the Township.

> At the present time, we are quite satisfied with the present inspection agencies doing the electrical inspection for this Township. If at any time we feel these agencies cannot handle all the electrical inspections in the Township,

we will consider adding another agency. We will keep your petition on file and consider you at that time.

Thus the door was shut upon appellant without the township even acting upon appellant's application.

Although the ordinance does not expressly preclude non-approved agencies from doing business in the township, it clearly confers a considerable competitive advantage on those within the inspection industry who have received the imprimatur of the board. The court below rightly noted that the ordinance "effectively permits only approved agencies to perform electrical inspections in the Township." That impact on trade requires us to examine the ordinance carefully. *Kroger Co. v. O'Hara Township,* 481 Pa. 101, 392 A.2d 266 (1978).

Therefore, with appellant's right to do business as an inspection agency in West Goshen turning upon approval under the ordinance, a key issue, involving substantive and procedural due process, is the approval process under which, thus far, two other agencies have been approved without any kind of open proceeding, and appellant has similarly been rejected.

Closely related is the second issue posed by appellant; although couched variously in equal protection and due process terms, it is essentially the question of whether the inspection agency approval provisions of the ordinance lack sufficient standards so that an unlawful delegation of legislative power results. I address this latter question first.

The court below stated that "no specific standards are established in the Ordinance" as to extent of insurance or precise qualifications of personnel; still the court found the language of Section 6(d) to mark "boundaries sufficiently distinct to permit the Ordinance to be administered fairly and impartially."

The court stated:

> When we construe the operative language of the ordinance . . . we think it quite clear that in order to gain approval, an electrical inspection agency must show that its personnel are qualified to perform inspections, that inspections performed by it are complete, that it has insurance coverage, and that its reports are adequate.

I cannot agree with the lower court's conclusion. For an agency's "qualifications" (the ordinance term) to depend on its personnel being "qualified" (the trial court's term) is tautological, equivalent to a statement that an agency will be approved if its personnel are approved. Similarly, when the court reads completeness of inspection as the standard giving meaning to "method of operation," finds existence of insurance coverage as the answer to "completeness of insurance coverage," and considers that the "type of report" is proper if it is "adequate," the adopted approach can be seen as circular.

Insofar as the ordinance speaks to the approval of agencies, it reposes an unjustified discretion in the board, and is thus an invalid exercise of the police power. As was said in *Kellerman v. Philadelphia,* 139 Pa. Superior Ct. 569, 575, 13 A.2d 84, 86 (1940):

> [A]ny legislative enactment which vests in a person or body of persons free of any standard independent of his or their own mind and judgment the power of supplying, or giving force to . . . its terms falls beyond the limits of judicial approval . . . and is unconstitutional.

The Supreme Court of Pennsylvania, in *Archbishop O'Hara's Appeal,* 389 Pa. 35, 48, 131 A.2d 587, 593 (1957), and this court, in *Hauser v. Catasauqua Borough Zoning Hearing Board,* 20 Pa. Common-

wealth Ct. 313, 318, 341 A.2d 566, 570 (1975), have both quoted with approval the following, from 8 E. McQuillin, Municipal Corporations (3rd Ed.) §25.62:

> The fundamental rule [is] that an ordinance must establish a standard to operate uniformly and govern its administration and enforcement in all cases, and that an ordinance is invalid where it leaves its interpretation, administration or enforcement to the unbridled or ungoverned discretion, caprice or arbitrary action of the municipal legislative body. . . .

Although the ordinance appears generally valid, I believe that the provisions for approving private agencies are invalid unless and until adequate standards and procedures, to govern the approval of agencies in a constitutional manner, are added to the ordinance.

Even if adequate standards were in the ordinance, the approach of the township thus far has contravened principles of due process and equal protection. The selection, in the body of the ordinance itself, of the other two agencies, although legislatively framed, is in fact an administrative action for which there is no apparent justification.

I cannot share the lower court's view that "designation of the two named agencies does not deny Atlantic-Inland or others the ability to gain approval." The fact is that the designation of the named agencies through a "predetermination by the governing body"—as the lower court itself describes that action —and the township letter plainly limiting approved agencies to those already designated, clearly show that the township interpreted and applied the ordinance to create a closed class for at least an indefinite period. The approach is a denial of equal protection because it is closely analogous to that condemned in *Morey v. Doud,* 354 U.S. 457 (1957).

That letter of the assistant township manager, rejecting appellant's application, has also put the township on record as not considering appellant's application on the merits. Appellant, having been told, in effect, "Don't call us; we'll call you," had no avenue other than to turn to the courts.

After-the-fact justifications, as later offered in court by the township, do not alter the fact that appellant was afforded no opportunity to present its qualifications on any orderly basis.

The township cannot properly assert, in support of its denial, its belated claims as to past practice of appellant with regard to the submission of inspection cards to the township before there was an ordinance. Granting that the township could have required such submissions to an appropriate office, such a requirement must be plainly spelled out by a due enactment. *Baldwin Borough v. Mathews*, 394 Pa. 53, 145 A.2d 698 (1958). Absent such authority, the purported policy of the township was simply precatory. Because the record reveals no basis in law for such a requirement, appellant's practice might have been considered uncooperative, but it was not in disregard of any lawful obligation.

I agree that we should affirm the lower court's dismissal of the mandamus complaint, because, with the approved agency provisions of the ordinance being invalid, there is no basis on which to command the township to perform any action in connection with agency approval.

However, those provisions of the ordinance relating to approved electrical inspection agencies, such as Section 3(b), and the references to such agencies in Section 6 and 8, are, I submit, invalid.

Therefore, in the equity case, I believe that administration of the invalid provisions should be enjoined.

Of course, the township could amend the ordinance to provide (1) measurable standards to govern the approval of private agencies and (2) an administrative procedure by which all applicants for that approval may have their qualifications considered on an equal and open basis. The administrative procedure for approving or disapproving an agency may be a simple, practical process employing written forms and such other mode of obtaining information as the township may ordain as appropriate. No formal hearing need be involved at the outset, but I note that the Local Agency Law, 2 Pa. C.S. §§551-555, affords a hearing opportunity to an applicant, at least after an administrative denial. Thereafter, judicial review would be governed by the Local Agency Law, 2 Pa. C.S. §§751-754.

This decision was reached prior to the expiration of the term of office of Judge DiSalle.