## Kownacki's Service Center v.
## City of Pittsburgh

*Paul A. Manion*, for plaintiff.
*Marvin A. Fein*, for defendant.

ZAPPALA, Chancellor, October 29, 1982—
Before this court is the plaintiffs' complaint in equity, challenging the constitutionality of an Ordinance of the City of Pittsburgh. It appears from the record that on or about April 3, 1978, the City Council of the City of Pittsburgh amended Ordinance No. 210 of the City Fire Code completely banning self-service gasoline stations within the city limits. This ban remained in effect and unchallenged until the spring of 1982, when plaintiffs and a substantial number of their customers petitioned the City Council to adopt an amendment to Ordinance 210, permitting self-service gas stations. As a result of plaintiffs' actions, Councilman James O'Malley submitted to council a proposed amendment to Ordinance 210. Essentially, the amendment would allow self-service within the City of Pittsburgh, subject to certain limitations. The amendment as submitted reads as follows:

"THE COUNCIL OF THE CITY OF PITTS-BURGH HEREBY ENACTS AS FOLLOWS:

Section 1. Title Eight, Fire Prevention, Chapter 803, Amendments, Section 803.01 Changes Specified, is hereby amended to read:

F-1702.2 Partial or Complete Self-Service Stations

1. Partial or complete self-service stations shall mean those properties where flammable and combustible liquids used as motor fuel are stored and subsequently dispensed from fixed approved dispensing equipment into the fuel tanks of motor

vehicles by persons other than the service station attendant. These properties may be utilized for sale of other retail products.

2. Listed dispensing devices such as, but not limited to, coin-operated, card-operated and remote controlled types are permitted at self-service stations.

3. Listed dispensing devices and remote control devices shall be required at partial or complete self-service stations. Hose nozzle valves used for the dispensing of flammable or combustible liquids by persons other than the service station attendant shall be approved automatic closing types without a latch-open device.

4. The control, supervision, and observation of dispensing of flammable or combustible liquids into the fuel tank of a vehicle or an approved container shall be maintained by a competent person at all times. It shall be the responsibility of the attendant supervising a self-service station to:

a. prevent the dispensing of flammable or combustible liquids into nonapproved portable containers;

b. control sources of ignition;

c. immediately handle accidental spills;

d. use fire extinguishing equipment if needed;

e. notify appropriate emergency agency when necessity arises.

5. Emergency controls, including main power shutoff switch or switches, shall be installed at a location no more than 15 feet from the attendants' (sic) principal control location and not more than one hundred feet from the dispensers.

6. A control shall be provided that will permit the pump to operate only when a dispensing nozzle is removed from its' (sic) bracket on the dispensing unit is manually actuated. This control shall also

stop the pump when all nozzles have been returned to their brackets.

7. Operating instructions shall be conspicuously posted in the dispensing area, either on the dispenser or the dispenser island.

8. On each self-service dispenser island there shall be conspicuously posted a sign in letters at least one inch in height in contrasting colors with the following warnings:

a. "Warning: It is unlawful and dangerous to dispense gasoline into unapproved container."

b. "No Smoking"

c. "Turn off vehicle motor before filling tank."

d. "Attendant must be informed of any spillage."

9. A list of emergency procedures and instructions shall be conspicuously posted in the immediate vicinity of the operator supervising the self-service function. This list is to include the Fire Department Emergency Notification Procedure.

10. The dispensing operations shall at all times be in the clear view of the attendant, and the placing or permitting of any obstacle to come between the dispensing operation and the attendant so as to obstruct the attendants (sic) view is prohibited. The attendant shall be able to keep the person dispensing the gasoline within sight range and shall not activate the dispensing device if he is unable to see the person requesting service at the self-service dispenser.

11. No more than two parallel self-service islands in a horizontal vision line, from the control location, and two parallel self-service islands peripheral to each side of the horizontal vision line, for a total of six self-service islands shall be supervised by any single attendant.

12. At all times while flammable or combustible liquids are being dispensed, the attendant shall re-

main within arms length distance of remote control facilities at the principal location.

13. A voice communication system, such as, but not limited to an intercom system shall be required to allow direct voice communication at all times from the attendant to persons dispensing flammable or combustible liquids.

Section 2. All other amendments to this section are repealed.

Public hearings were held on June 8, 1982, followed by a hearing before the Committee on Public Safety on June 23, 1982. The matter was finally brought before the full council on June 28, and defeated by a five to three vote.

Following the defeat of the proposed amendment, plaintiffs instituted the present action in equity. In their complaint, plaintiffs have requested that this court declare the ordinance unconstitutional, and issue an injunction restraining and enjoining the city from enforcing the ordinance. The city argues that the passage of the ordinance banning self-service stations is a proper exercise of its police powers for the protection of the public health and welfare. The hearing on this matter was thus commenced on August 19, 1982.

The first witness called by plaintiff was John Ainlay, an expert in the field of chemistry and combustion. As such, he was involved in the preparation of standards which have been utilized nationally. Initially, Ainlay was critical of self-service stations but after the implementation of safety regulations and a review of the safety records of both full-service and self-service stations, he changed his attitude. The studies indicated that the safety records of the self-service station were somewhat better than the records of full-service stations. The reason for this difference is that at a full-service station

a potential hazard exists in the dispensing of gasoline because an attendant may leave the nozzle unattended while he services other parts of the vehicle or even other vehicles. This practice may result in spillage. Finally, Ainlay testified that he was acquainted with the Pennsylvania State Police regulations for the operation of a self-service station and believes that these regulations are quite adequate to ensure safety in the operation of a self-service station. Based upon his expertise, Ainlay was of the opinion that the self-service station is safer than a full-service station.

On cross-examination, Ainlay indicated that the National Fire Prevention Association (N.F.P.A.) has drafted standards for full-service and self-service stations and that these standards have been adopted by approximately 40 states. The standards draw a distinction between full and self-service stations, resulting in stricter standards for the self-service stations. The basis for the less stringent standards for the full-service stations is that the attendant is trained to dispense gasoline and therefore more knowledgeable than the layman who dispenses his own gasoline. Because a self-service operator does not necessarily know the competence of his customers, an attendant should be present to observe the dispensing of gasoline and offer assistance should the need arise. He concluded that self-service stations do not necessarily present a safety hazard but should be permitted only with the appropriate regulations.

Plaintiffs' next witness was Jack W. Keiffer, formerly with the Pennsylvania State Police. In his capacity with the Pennsylvania State Police, Keiffer was instrumental in the preparation of the regulations for the operation of self-service stations, used throughout the Commonwealth excluding Philadel-

phia and Pittsburgh. These regulations were in part based upon the N.F.P.A.'s guidelines. Keiffer indicated that at first he was skeptical of the self-service stations as he believed that they caused a public safety hazard. However, upon close examination of the self-service and full-service operations, Keiffer concluded that, today, with the implementation of the appropriate regulations, the self-service station is as safe as the full-service station.

Plaintiff then called John Harpur, Deputy Fire Chief of the City of Pittsburgh. In addition to his position of Deputy Fire Chief, Harpur serves on the Board of Code Review, which reviews Ordinances prior to submission to council. As a member of the board, Harpur researched the proposed amendment by reviewing State and local codes and drafted a proposed code for regulating self-service stations. After fully investigating the matter, the board recommended the council adopt the proposed regulations.

Finally, the last expert called by plaintiffs was Robert Fehr, an insurance expert specializing in calculating premiums for fire insurance policies. According to Fehr, self-service and full-service gas stations are rated the same. Thus a self-service station creates no added risk, at least, so far as the insurance companies are concerned.

Defendant's first witness was Thomas E. Fall, a full-service station operator, who had been dispensing gasoline since he was 12 years old. He contended that self-service stations did not adequately control the dispensing of gasoline. Furthermore, any regulations adopted to control the dispensing of gasoline could not realistically be regulated or enforced. Likewise, defendant called as a witness Kenneth Homer, another full-service station operator, to attest that full-service station opera-

tors instruct their employees on the use and operation of the fuel pumps and the needs for safety habits. Defendant also called several other full-service station operators to support its position that self-service stations were safety hazards.

At the close of the testimony, the court then permitted each party the opportunity to orally argue its case, and to submit post trial briefs. Having reviewed all the testimony submitted and the briefs of both parties, this court must conclude that Ordinance No. 210 is repugnant to the Constitutions of both our Commonwealth and United States, and therefore must be stricken.

Although it is the primary function of the legislative branch to enact laws it deems necessary for the protection of the public welfare, it is the duty of the judiciary to review the exercise of such power and void such laws that are clearly repugnant to our Constitution and the Constitution of the United States. Hertz Drivurself Stations, Inc., v. Siggins, 359 Pa. 25, 58 A.2d 464 (1948), Butcher v. Rice, 397, Pa. 158, 153 A.2d 869 (1959). In doing so, the court must not question the wisdom of the legislature in enacting such legislation, but the power to enact *any* such legislation. While this court has repeatedly refused to assume the function of a super-legislative body, endowed with omnipotent wisdom, this restraint should not be interpreted as a fear to act when faced with a clear violation of one of our fundamental principals of government. (Swartz v. Masloff, G.D. 80-14685, aff'd. Commonwealth Ct., opinion by MacPhail, J. filed November 23, 1981, at No. 77 T.D. 1980, cert. den. Supreme Ct., per curiam at No. 19 W.D. Allocatur Docket 1982; Christoffell v. Shaler Area School District, G.D. 80-16056, aff'd. Commonwealth Ct. opinion by Rogers, J. filed June 11, 1981; O'Block v. Wilson, G.D.

80-18671 opinion filed September 11, 1980.) Our Constitution and the Constitution of the United States arose out of tyranny, when an overbearing government dictated to the lives of its citizenry. As a direct result of this experience, our founding fathers established a governmental system of checks and balances to ensure that one branch does not overstep the bounds of its authority.

Plaintiffs contend that by passage of the amendment to Ordinance No. 210 banning self-service stations, the City Council violated various articles of our Constitution and the equal protection clause of the 14th amendment of the United States Constitution. Since this amended ordinance attempts to restrict a fundamental right, plaintiffs argue that this court must apply the strictest of standards in evaluating the validity of the ordinance. Alternatively, if the court were to determine that the subject matter of the ordinance was proper for regulation under the police powers of the city, then plaintiffs argue that no legitimate or rational basis has been shown to support the infringement. Conversely, the city argues that it had every right to regulate self-service stations in that they presented a public safety hazard. Therefore, the ban comes within the police powers of the city.

It is a general principal of construction that a court will not determine the constitutionality of an act unless it is absolutely necessary for the determination of the case. Altieri v. Allentown Officers' and Employees' Retirement Bd., 368 Pa. 176, 81 A.2d 884 (1951); Atlantic-Inland Inc. v. Board of Supervisors, 48 Pa. Commw. 397, 410 A.2d 380 (1980). If a court must determine the constitutionality of a legislative act, it is initially presumed that the legislature has not enacted an unconstitutional statute. National Wood Preserves, Inc. v. Commonwealth,

489 Pa. 221, 414 A.2d 37 (1980); Commonwealth v. Bryant 239 Pa. Super. 43, 361 A.2d 350 (1976). The party attacking the Constitutionality of the act has a heavy burden of overcoming a strong presumption of constitutionality. Commonwealth v. Robinson 497 Pa. 49, 438 A.2d 964 (1981); National Wood Preserves, supra; Ruano v. Barbieri, 42 Pa. Commw. 67, 400 A.2d 235 (1979). It is clear from the review of the complaint and the relief sought, that the gravamen of the controversy is the constitutionality of the amended Ordinance No. 210. Therefore, the court must examine the validity of the ordinance in question.

The equal protection clause of the 14th Amendment to the United States Constitution provides that no state shall, "deny to any person within its jurisdiction the equal protection of the laws." Likewise, Article III Section 32 of our Constitution has been construed as the equal protection clause in our Commonwealth. Laudenberger v. Port Auth. of Allegheny Cty. 496 Pa. 52, 436 A.2d 147 (1981); Baltimore & O. R. Co. v. Commonwealth, Dept. of Labor & Industry, 461 Pa. 68, 334 A.2d 636 (1975). In short, our equal protection clause provides that no person or class of persons shall be deprived the same protection of laws which are enjoyed by other classes in like circumstances.

The starting point for analyzing whether the amended ordinance denies equal protection is whether the municipality has created a classification which provides for an "unequal distribution of benefits or imposition of burdens." Commonwealth v. Webster, 462 Pa. 125, 337 A.2d 914 (1975), cert. den. Webster v. Pennsylvania, 423 U.S. 898, 9 S. Ct. 201, 46 L.Ed.2d 131 (1975). If such classification does infringe upon or restrict a fundamental right, the Court must strictly review the ordinance

to see if the municipality has a compelling interest for the classification. Springfield School Dist. v. Department of Education, 483 Pa. 539, 397 A.2d 1154 (1979); Gilman v. Unemployment Comp. Bd. of Review, 28 Pa. Commw. 630, 369 A.2d 895 (1977). However, if the classification does not infringe upon a fundamental right, the court must review the ordinance to determine whether the legislature has any rational basis for the legislation. Therefore equal protection does not prevent the legislature from exercising its police powers for the health, welfare and safety of the public. Daugherty v. Messner, 404 Pa. 235, 172 A.2d 288 (1961). However, the government may not arbitrarily interfere with the private business or impose unreasonable restrictions upon the same, under the disguise of protecting the public. Commonwealth v. Everett, 111 Pa. Super. 302, 170 A720 (1934).

It is clear to this court that even giving the defendant the benefit of applying the less restrictive test of any rational basis for the amended ordinance the said ordinance cannot be upheld. When a legislature adopts legislation based upon its police powers, it is implicit that there must be some evidence supporting a finding that the regulation is necessary for the public welfare. Such evidence has not been offered in this matter. Both at the trial and at the council hearings, it is clear that any concern of the safety hazard was disspelled by the various experts. In fact, the safety hazard issue did not appear to be a primary concern of the council when debating the proposal. If safety was the main concern of the council in defeating the amendment the same was not evident from its debate. (See Plaintiff's Exhibit 21, council hearing of June 23, 1982). The city advances two arguments for sustaining councils actions. First, the city argues that there is nexus be-

tween what needed to be regulated and what was in fact regulated by the ordinance. Therefore, the legislative act was a proper exercise of its police powers. The argument, however, is premature for it fails to consider that initially there must be a determination that a safety hazard exists which needs to be regulated. If a safety hazard exists, then the council would be correct in adopting legislation to protect the public. When the constitutionality of an ordinance is questioned and brought before the court, the court's function is to examine the legislation to determine if a nexus exists between what needs to be regulated and what is in fact regulated by the ordinance. Since the city is reaching the nexus argument before establishing the justification for the exercise of the police powers, this argument of the city is premature and must be rejected.

The city next argues that the court cannot substitute its regulations for that of council. With this argument this court is in agreement. However, this court is not attempting to implement any legislation. The court is only reviewing the ordinance to determine whether the council had the power to restrain the prohibited act. It is not this courts function to dictate to the legislature what laws to enact. However, should the legislature abuse its authority in enacting legislation this court will act in correcting such abuse. Once it is determined that there is a rational basis for any legislative action, the court will defer to the legislatures wisdom, provided of course, the legislature is not infringing upon a fundamental right. Throughout these hearings and the oral arguments plaintiffs have shown, and the city has failed to refute, that the operation of self-service stations presents no greater risk of harm then full-service stations. In fact, at one time during the proceedings it appeared that the city was arguing that

council's refusal to amend the ordinance by adopting an alternative, was, a proper exercise of its police powers because council was making an affirmative determination that non-action was in the best interest of the public. This position may be correct except that no evidence was presented to council demonstrating that the self-service station was a safety hazard, nor was safety the main concern of council. Thus the city's argument assumes that the council examined the proposed amendment from a safety factor and determined that self-service stations were unsafe. In that both types of stations deal with a highly combustionable substance there exists some degree of hazard. However, no evidence has been presented to support the city's contention that self-service stations present any more hazard then full-service stations.

As indicated initially, the party attacking the constitutionality of an act has the burden to establish that the legislative act is improper. It is clear from the testimony that plaintiffs have overcome the presumption of the constitutionality of Ordinance No. 210 as amended and have met the burden establishing the invalidity of the ordinance. Accordingly, Ordinance 210 as amended on April 3, 1978, must be stricken as unconstituitional.*

## DECREE NISI

And now, this October 29, 1982, after taking testimony, hearing oral arguments and reviewing the briefs submitted by both parties, this court finds that City of Pittsburgh Ordinance No. 210 as

---

*Because the court holds that insufficient evidence was presented to find any rational basis for the ordinance it is unnecessary to determine whether council attempted to restrict a fundamental right.

amended on April 3, 1978, specifically, subsection 16.64(f) of Ordinance No. 210, approved May 11, 1966, is unconstitutional and must be stricken. It is further ordered that this decree shall be stayed for one hundred eighty days to permit council to amend ordinance No. 210 in compliance with the court's Adjudication. If no action is taken within the pre-scribed period, this decree shall take effect, and the court will issue an injunction enjoining the City of Pittsburgh from interfering with the operation of self-service gasoline stations.