**Francis KINNIRY, Petitioner,**

v.

**PROFESSIONAL STANDARDS AND PRACTICES COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted June 13, 1996.

Decided July 10, 1996.

---

A. Martin Herring, for Petitioner.

Joseph M. Miller, Assistant Counsel, for Respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and MIRARCHI, Senior Judge.

FRIEDMAN, Judge.

Francis Kinniry (Kinniry) appeals from an order of the Professional Standards and Practices Commission (Commission), granting the Pennsylvania Department of Education's (Department) motion to revoke Kinniry's teaching certification.[1]

In 1993, Kinniry was indicted by the federal government on one count of conspiracy to traffic in goods bearing counterfeit trademarks, three counts of trafficking in goods bearing counterfeit trademarks, and one

---

1. Revocation is stayed, however, pending final disposition of all appeals.

count of aiding and abetting.[2] Under a plea agreement, Kinniry pled guilty to trafficking in counterfeit goods or services in violation of 18 U.S.C. § 2320, and conspiracy to commit offenses or to defraud the United States in violation of 18 U.S.C. § 371.

Based on Kinniry's conviction of these federal offenses, on November 23, 1993, the Board of Directors (Board) of the Abington School District (District), where Kinniry was employed as a teacher, terminated Kinniry's employment on the basis of immorality.[3] On December 9, 1994, the Department filed a Notice of Charges with the Commission, seeking revocation of Kinniry's teaching certification in light of his conviction on the counterfeiting charges.[4] (R.R. at 1–30.) Kinniry's attorney responded to the Notice of Charges in a letter dated January 5, 1995.[5] (R.R. at 31.) Due to the brevity of Kinniry's

Answer to the Notice of Charges, the Department filed a Motion for Summary Judgment on March 25, 1995. In the motion, the Department asserted that summary judgment was proper because Kinniry had failed to specifically address each of the averments contained in the Notice of Charges, and because the crimes to which Kinniry had pled guilty were crimes of moral turpitude; thus, the Department maintained that the Commission was required by statute to revoke Kinniry's teaching certificate. (R.R. at 32–37.)

The parties filed briefs on the matter, (R.R. at 72–104); however, Kinniry declined to participate in the oral argument scheduled for July 21, 1995 (R.R. at 108, 113). After argument, the Commission found that: (1) Kinniry's denial of the allegations contained

---

**2.** Specifically, Kinniry was accused of offering for sale counterfeit designer watches on seven occasions between May 21, 1991 and August 20, 1991. The approximate value of the watches was $37,520.00.

**3.** Section 1122 of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 11–1122 provides in relevant part:

> The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employe shall be *immorality*, incompetency, intemperance, cruelty, persistent negligence, mental derangement, advocation of or participating in un-American or subversive doctrines, persistent and wilful violation of the school laws of this Commonwealth on the part of the professional employee....

24 P.S. § 11–1122 (emphasis added).

Kinniry appealed his dismissal to the Secretary of Education (Secretary), who affirmed. On appeal to this court in *Kinniry v. Abington School District*, 673 A.2d 429 (Pa.Cmwlth.1996), we held that, in light of the element of deceit involved in counterfeiting, the District had met its burden of proving that Kinniry's conduct was, indeed, immoral. Although "immorality" is not statutorily defined, for purposes of section 1122 of the School Code, "immorality ... may be such a course of conduct as offends the morals of community and is a bad example to the youth whose ideals a teacher is supposed to foster and elevate." *In re Flannery's Appeal*, 406 Pa. 515, 520, 178 A.2d 751, 754 (1962); *Horosko v. Mt. Pleasant Township School District*, 335 Pa. 369, 6 A.2d 866 (1939), *cert. denied*, 308 U.S. 553, 60 S.Ct. 101, 84 L.Ed. 465 (1939).

**4.** Section 5(a)(11) of the act known as the Teacher Certification Law (Law), Act of December 12,

1973, P.L. 397, *as amended*, 24 P.S. § 2070.5(a)(11), provides in relevant part:

> (a) The Professional Standards and Practices Commission shall have the power and its duty shall be:
>
> ....
>
> (11) To discipline ... any professional educator found guilty upon hearings of immorality ... and to direct the [DOE] to suspend the certificate of any professional educator indicted for a crime or misdemeanor involving moral turpitude ... whenever a certified copy of such indictment shall have been filed with the commission and to revoke the same upon conviction thereof whenever a certified copy of the verdict or judgment or sentence of the court shall have been filed with the commission....

Section 1(6) of the Law, 24 P.S. § 2070.1(6), provides that:

> (6) **"Discipline"** shall mean any one of the following actions:
>
> (i) Issue a private reprimand.
>
> (ii) Issue a public reprimand.
>
> (iii) Direct the department to suspend the certificate of a professional educator for a period to be determined by the commission.
>
> (iv) Direct the department to revoke the certificate.

**5.** The letter, in its entirety, stated:

> Please be advised that this office represents Francis Kinniry relative to the above captioned matter.
>
> The respondent requires a hearing in the above matter, and contests that he was engaged in and convicted of crimes involving moral turpitude.

(R.R. at 31.)

within the Notice of Charges was insufficient; (2) Kinniry's right to due process had not been violated; (3) no evidentiary hearing was necessary; (4) the Commission is directed to revoke the certifications of educators convicted of crimes of moral turpitude; (5) the crimes Kinniry pled guilty to were crimes of moral turpitude; and (6) the Department did not engage in impermissible commingling of its prosecutorial and adjudicatory functions. (R.R. at 108–17.) Based upon these findings, the Commission issued an order on September 6, 1995, granting the Department's Motion for Summary Judgment.

On appeal,[6] Kinniry asserts that the Commission's order should be reversed and a hearing granted because: (1) Kinniry's denial of the allegations within the Notice of Charges was sufficient; (2) the order was given without a hearing to determine whether the crimes to which he pled guilty were crimes of moral turpitude; (3) the order was given without an evidentiary hearing which would have allowed Kinniry to present evidence of the facts surrounding his crimes, his guilty plea and his continued fitness to teach; and (4) Kinniry's right to due process was violated by the Department's commingling of its prosecutory and adjudicatory functions.

■ Under 22 Pa.Code § 233.13(e)(1)(i), a Notice of Charges is to be treated as an order to show cause under 1 Pa.Code § 35.14. If the educator timely responds in writing to the Notice of Charges, *setting forth the facts upon which he or she is relying and stating concisely the matters of law relied upon,* in compliance with 1 Pa. Code § 35.37, the Commission will appoint a hearing officer to conduct an evidentiary hearing on the matter. 22 Pa.Code § 233.13(e)(1)(iv)(A). If, however, the educator fails to timely respond to the Notice of Charges, the educator is deemed to have defaulted under 1 Pa.Code § 35.37, and the *Commission may deem admitted the relevant* facts stated in the Notice of Charges and proceed to consideration of discipline based upon the admitted facts and exhibits to the Notice of Charges. 22 Pa.Code § 233.13(e)(1)(iii)(A).

■ Kinniry first asserts that the Notice of Charges did not indicate that a proper response required a specific denial of the asserted facts in addition to a request for a hearing. Based upon the plain words of the Notice of Charges, we must disagree with Kinniry's assertion that the Notice of Charges failed to indicate that an answer with a specific denial was required. After laying out the charges against Kinniry and calling for the revocation of his teaching certificate, the Notice of Charges stated:

If you contest any factual assertion made in this Notice, you have a right to request, in writing, a hearing. The proceedings shall be in the nature of a formal hearing conducted in accordance with the procedures described in 24 P.S. § 2070.13. *Your response and request for a hearing must include specific admissions or denials of the factual assertions, as well as a concise reference to the facts and matters of law relied upon.*

Your response must be received by the Commission within thirty (30) days after the date of your receipt of this Notice of Charges. If you fail to file a response to this Notice or to request a hearing within thirty (30) days after its receipt, all of the factual assertions stated in the above notice may be considered admitted and discipline may be imposed without a hearing.

(R.R. at 1–4) (emphases in original deleted, emphasis added).

Here, despite the clear directive in the Notice of Charges, Kinniry did not specifically admit or deny any of the factual assertions, nor did he provide any reference to facts and matters of law relied upon; rather, he merely stated that he contested the legal conclusion that the crimes he was convicted of were crimes of moral turpitude. Thus, Kinniry failed to file a responsive answer to the Notice of Charges, and the Commission could properly deem admitted the relevant facts stated in the Notice of Charges and

---

6. Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Startzel v. Commonwealth, Department of Education,* 128 Pa.Cmwlth. 110, 562 A.2d 1005 (1989).

proceed to consideration of discipline without scheduling an evidentiary hearing on the matter. 22 Pa.Code § 233.13(e)(1)(iii)(A).

 Kinniry next asserts that, even if all facts contained within the Notice of Charges are deemed admitted, he is entitled to a pre-order hearing to determine whether the crimes he pled guilty to were, in fact, crimes of moral turpitude. Again, we disagree. Pursuant to the mandate of section 5(a)(11) of the Act, 24 P.S. § 2070.5(a)(11), the Commission has defined the term "crime of moral turpitude" to include "conduct done knowingly contrary to justice, honesty or good morals." 22 Pa.Code § 237.9(a). Moreover, 22 Pa.Code § 237.9(b) provides that:

> A determination of whether a crime or misdemeanor involves moral turpitude will be determined based solely upon the elements of the crime or misdemeanor. The underlying facts or details of an individual criminal charge, indictment or conviction is not relevant to the issue of moral turpitude. The actual guilt or professed innocence of the charged, indicted or convicted professional educator is not relevant.

Here, Kinniry pled guilty to trafficking in counterfeit goods or services, actions that fall into the category of *crimen falsi* crimes.[7] Under 18 U.S.C. § 2320, the elements of this crime are the use of a counterfeit mark or a spurious designation that is identical with, or substantially indistinguishable from, a registered trademark, on or in connection with such goods or services, which is likely to cause confusion, mistake or deception.

Because examination of these elements reveals that such conduct is "conduct done knowingly contrary to justice, honesty or good morals," no hearing is necessary to determine that Kinniry's crimes were crimes of moral turpitude. Therefore, once a certified copy of Kinniry's convictions for crimes of moral turpitude had been presented, the Commission was bound by section 5(a)(11) of the Law, 24 P.S. § 2070.5(a)(11), to revoke Kinniry's certification.

 Finally, Kinniry asserts that the Department impermissibly commingled its prosecutorial and adjudicatorial functions, thus violating his due process rights. We disagree that the Department acted in such a dual role here. Rather, the Department, as the entity which brought the decertification charges against Kinniry, acted as the prosecutor; however, it was the Commission that adjudicated the decertification process.[8]

Accordingly, we affirm the order of the Commission.

### ORDER

AND NOW, this 10th day of July, 1996, the order of the Professional Standards and Practices Commission, dated September 6, 1995, is affirmed.

---

7. *"Crimen falsi"* is defined as an "offense which involves some element of deceitfulness, untruthfulness, or falsification...." Black's Law Dictionary 335 (5th ed.1979).

8. Contrary to Kinniry's assertions, the fact that the Department acted as the adjudicator in the prior dismissal action does not imply impermissible commingling here, where the Department has assumed the role of prosecutor in the decertification process.