# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

N.T.,                                         :
                          Petitioner          :     **CASE SEALED**
                                              :
                    v.                        :     No. 271 C.D. 2020
                                              :     Argued:  May 10, 2021
Department of Education,                       :
                          Respondent          :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE MARY HANNAH LEAVITT, Judge
            HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION BY
JUDGE COHN JUBELIRER                          FILED:  July 7, 2021


N.T. (Petitioner) petitions for review of the February 10, 2020 Order (Order) of the Professional Standards and Practices Commission (Commission) that determined that Petitioner committed a crime of moral turpitude and directed the Department of Education (Department) to revoke Petitioner's teaching certificate and eligibility to be employed as an educator pursuant to Section 9.2 of the Educator Discipline Act (Act).[1]  On appeal, Petitioner argues that:  (1) the Commission's finding that he was convicted under the defraud clause of 18 U.S.C. § 371

---

[1] Act of December 12, 1973, P.L. 397, *as amended*, added by Section 5 of the Act of December 20, 2000, P.L. 918, 24 P.S. § 2070.9b(a)(2).  Section 9.2 requires the Commission to "[d]irect the [D]epartment to revoke the certificate and employment eligibility of an educator who has been convicted of . . . a crime involving moral turpitude, or the attempt, solicitation or conspiracy to commit any crime set forth in this section" and instructs that "the term 'conviction' shall include a plea of guilty or nolo contendere." *Id.*

("Conspiracy to commit offense or to defraud the United States") (Section 371)[2] was not supported by substantial evidence of record; (2) the Commission erred by looking beyond the elements of the crime in making its decision and in deciding that a violation of Section 371 is a crime of moral turpitude; and (3) the Commission violated Petitioner's due process rights by revoking his educator's license and eligibility on summary judgment without a hearing.[3]  After careful review, we affirm.

## I.  BACKGROUND

The following facts are undisputed.  Petitioner is the chief executive officer of a cyber charter school.  (Notice of Charges ¶ 2, Reproduced Record (R.R.) at 2a.) Petitioner has the following teaching certifications issued by the Department:  (1) an Instructional I teaching certificate in the area of Social Studies 7-12; (2) an Administrative I certificate in the area of Secondary Principal 7-12; (3) an Administrative I certificate in the area of Elementary Principal K-6; and (4) a Letter of Eligibility in the area of Superintendent PK-12.  (*Id.* ¶ 1.)

On August 21, 2013, the United States brought an indictment against Petitioner alleging, among other charges, a violation of Section 371.  (Indictment at

---

[2] Section 371 provides, in relevant part, that

[i]f two or more persons conspire either to commit any offense against the United States, **or to defraud the United States**, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 371 (emphasis added).

[3] We have reordered the issues presented by Petitioner for ease of discussion and analysis, as whether Petitioner's due process rights were violated turns on whether the Commission properly determined that he had been convicted of a crime of moral turpitude.

19-34, R.R. at 27a-42a.) Under Count 6, charging Petitioner with a violation of Section 371, the indictment states that Petitioner "did knowingly and willfully conspire . . . to defraud the United States[.]" (R.R. at 27a.) Petitioner ultimately pled guilty to only "Count 6" on August 24, 2016, in the United States District Court for the Western District of Pennsylvania.[4] (*Id.* at 64a.) The Amended Judgment describes the "Nature of Offense" to which Petitioner pled guilty under Section 371 as a "Tax Conspiracy." (*Id.* at 69a.)

On October 10, 2019, the Department filed a Notice of Charges (Notice) with the Commission alleging that Petitioner had been convicted of conspiring to defraud the United States under Section 371 and that the offense is a crime involving moral turpitude. (Notice of Charges ¶ 15, R.R. at 5a.) That same day, the Department filed a motion for summary judgment requesting that the Commission revoke Petitioner's teaching certificate and employment eligibility as an educator pursuant to the Act. Petitioner filed a response to the summary judgment motion admitting he "pled guilty to a violation of [Section] 371," but stating that because there are multiple ways in which Section 371 can be violated, "[i]t is impossible to determine based upon the literal language contained in Section 371 if the crime to which [he] pled guilty relates to a crime of 'moral turpitude.'" (Response to Motion for Summary Judgment ¶¶ 2-3, R.R. at 86a-87a.)

After oral argument, the Commission granted summary judgment in the Department's favor. (Commission's Order, R.R. at 98a.) The Commission explained that "[t]he determination of whether a crime involves moral turpitude is based solely upon the elements of the crime" and that "[t]he facts underlying the

---

[4] The remaining charges in the indictment appear to have survived until July 2018, at which time an Amended Judgment was entered reflecting that the remaining counts were dismissed on motion of the United States. (R.R. at 69a.)

charges are not relevant to the issue of moral turpitude." (Commission's Memorandum at 2-3 (citing 22 Pa. Code § 237.9(b),[5] and *Startzel v. Dep't of Educ.*, 562 A.2d 1005, 1007 (Pa. Cmwlth. 1989)).) The Commission analyzed Section 371 and concluded that "[t]he statute is written in the disjunctive and should be interpreted as establishing two alternative means of committing a violation." (*Id.* at 3 (citing *United States v. Harmas*, 974 F.2d 1262, 1266 (11th Cir. 1992), and *United States v. Vasquez*, 319 F.2d 381, 384 (3d Cir. 1963)).)[6] The Commission explained that Section 371 "condemns two types of conspiracies: one, to commit a substantive offense against the United States specified under other statutes, and the other to defraud the United States[.]" (*Id.* (citing *Vasquez*, 319 F.2d at 384).) The Commission found that Petitioner "concede[d] that the charge to which he pled guilty was made solely under the defraud clause of [Section] 371." (*Id.*) Because "[t]o 'defraud' the United States means to cheat the [g]overnment out of property or money, or to interfere with or obstruct one of its lawful governmental functions by deceit, craft[,] or trickery, or at least by means that are dishonest[,]" (*id.* (citing *Hammerschmidt v. United States*, 265 U.S. 182, 188-89 (1924), and *Vasquez*, 319 F.2d at 384)), the Commission found it "axiomatic that one who performs an act with the intent to defraud the government is guilty of an act contrary to justice, honesty, or good morals," (*id.* at 4).

The Commission thus "ha[d] no difficulty determining that the concept of moral turpitude embraces the crime to which [P]etitioner ple[d] guilty" and ordered

---

[5] The regulation instructs that "[a] determination of whether a crime involves moral turpitude will be determined based solely upon the elements of the crime. The underlying facts or details of an individual criminal charge, indictment[,] or conviction are not relevant to the issue of moral turpitude." 22 Pa. Code § 237.9(b).

[6] While not binding, decisions from the federal circuit courts may be cited for their persuasive value. *Edinger v. Borough of Portland*, 119 A.3d 1111, 1115 (Pa. Cmwlth. 2015).

4

that Petitioner's "educator certification and eligibility to be employed as a charter or cyber school staff member or a contracted educational provider staff member" be immediately revoked pursuant to the Act. (R.R. at 97a-98a.) Petitioner now seeks review of this Order.[7]

## II. DISCUSSION

### A. Whether substantial evidence exists for the Commission to find that Petitioner pled guilty under the defraud clause of Section 371 based either on the indictment or Petitioner's alleged concession.

#### 1. Parties' Arguments

Petitioner argues that the Commission's finding that he was convicted under the defraud clause of Section 371 was not supported by substantial evidence. Specifically, Petitioner asserts that he did not concede to pleading guilty under the defraud clause of Section 371. "Without this purported concession, the Commission cannot decipher based upon the elements of [S]ection 371 whether Petitioner committed a crime involving moral turpitude." (Petitioner's Brief (Br.) at 18.) Therefore, Petitioner avers that, in order to determine the crime involved moral turpitude, the Commission must have impermissibly considered the facts of the indictment rather than solely considering the plain language of Section 371, as it should have. (*Id.* at 11.) Petitioner relies on *Dunagan v. Bureau of Professional and Occupational Affairs, State Board of Nursing* (Pa. Cmwlth., No. 546 C.D. 2018,

---

[7] This Court's scope of review "is limited to a determination of whether constitutional rights were violated, [whether] an error of law was committed[,] or whether necessary findings of fact are supported by substantial evidence." *Dohanic v. Dep't of Educ.*, 533 A.2d 812, 814 (Pa. Cmwlth. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Obimak Enter. v. Dep't of Health*, 200 A.3d 119, 126 (Pa. Cmwlth. 2018) (quotations and citation omitted).

5

filed April 10, 2019),[8] in which the Board of Nursing (Board) "concede[d] that it erred by referencing the context of the [p]etitioner's tumultuous behavior as being during the execution of a search warrant[]" by "pulling that language from the handwritten note on the amended [c]riminal [i]information." (Petitioner's Br. at 19 (quoting *Dunagan*, slip op. at 12) (internal quotation marks omitted).) Petitioner compares the handwritten note in *Dunagan* to the information in the underlying indictment of Petitioner, as both are extraneous sources, beyond the purview of the Commission in considering whether Petitioner committed a crime of moral turpitude. (*Id.*) In sum, Petitioner argues that it is impossible for the Commission to have determined, based solely on the language of Section 371, whether his conviction was under the defraud clause.

In response, the Department argues that substantial evidence of record supports that Petitioner was convicted of conspiracy to defraud the United States. The Department argues that Petitioner pled guilty only to the count of the indictment charging him with "Tax Conspiracy" under Section 371 and points to the indictment, asserting the elements of the crime that the government was required to prove in order to show that Petitioner sought to defraud the United States were described therein. (Department's Br. at 11-12.) In this respect, the Department argues that while it "must rely solely on the elements of a crime when determining whether it is a crime involving moral turpitude, it is appropriate . . . to look to the certified court records, here the indictment, to determine which elements are subject to moral turpitude analysis." (*Id.* at 12-13 (citing 22 Pa. Code § 237.9(b).) The Department

---

[8] *Dunagan* is unreported, and while unreported opinions do not constitute binding precedent, they may be cited for their persuasive value. *See* Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b); Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

posits that because the record is "devoid of any reference" to any other substantive charge or separate underlying crime of conspiracy, the record shows that Petitioner was convicted of conspiracy to defraud the United States. (*Id.* at 12.) Finally, the Department alleges that Petitioner's counsel conceded that Petitioner pled guilty to committing conspiracy to defraud the United States before the Commission during oral presentation of Petitioner's case and that the Commission's statement that Petitioner conceded to pleading guilty to the defraud clause of Section 371 allegedly "corroborated" this earlier concession. (*Id.* at 13-14 (citing the Commission's Memorandum at 3).)

### 2. *Analysis*

Section 9.2 requires the Commission to "[d]irect the [D]epartment to revoke the certificate and employment eligibility of an educator who has been convicted of . . . a crime involving moral turpitude, or the attempt, solicitation or conspiracy to commit any crime set forth in this section" and instructs that "the term 'conviction' shall include a plea of guilty or nolo contendere." 24 P.S. § 2070.9b(a)(2). In determining whether a conviction qualifies as a crime of moral turpitude, the regulations provide that the Commission's determination is to be "based solely upon the elements of the crime. The **underlying facts or details** of an individual criminal charge, **indictment** or conviction are **not relevant** to the issue of moral turpitude." 22 Pa. Code § 237.9(b) (emphasis added). Thus, the "[d]etermination of whether a crime involves moral turpitude **turns on the elements of the crime**, not on an **independent examination of the details of the behavior underlying the crime**." *Startzel*, 562 A.2d at 1007 (emphasis added).

The Commission interprets the phrase "underlying facts or details" in the regulation to mean the facts alleged in the indictment, such as, here, the other

7

individual allegedly involved in the conspiracy, the overt acts taken in furtherance of the conspiracy, the details as to how the conspiracy was to be accomplished, and the amounts of money involved, etc. Under this interpretation, the regulation would not apply to limit review of the indictment to determine the section or clause of a criminal statute under which an individual was convicted.

Conversely, Petitioner interprets this phrase of the regulation as disallowing consideration of **all** details found in the indictment, including, in this case, whether Petitioner was indicted under and pled guilty to a violation of the defraud clause or of conspiring to commit another offense. This latter, strict interpretation would limit the Commission's review to only the text of Section 371, which states merely that it is an offense "either to commit any offense against the United States, or to defraud the United States," 18 U.S.C. § 371, without distinguishing between the two offenses.

To what extent the Commission may look at a charging document to determine the offense for which an individual was convicted appears to be one of first impression. While there appears to be no case on point, we find some guidance in our precedent. First, in *Bowalick v. Department of Education*, a teacher was convicted of simple assault, and the Commission revoked the teacher's certification as a result of its finding that simple assault qualifies as a crime of moral turpitude. 840 A.2d 519, 525 (Pa. Cmwlth 2004) (citing Section 2701(b) of the Crimes Code, 18 Pa.C.S. § 2701(b).) Similar to the offense of conspiracy in Section 371, there are different ways in which an individual can commit simple assault. In addition, the criminal statute defining simple assault differentiates between those situations in which the fight involved mutual consent, which are graded as misdemeanors of the third degree, and those that do not, which are graded as misdemeanors of the second

degree. The only charge stated was simple assault, generally, without reference to grading or the subsection the teacher allegedly violated. Because simple assault embraces altercations involving mutual consent, which may or may not implicate moral turpitude, we reversed the Commission's order revoking the teacher's certification. In reaching this determination, this Court did **not** consider the degree of the crime or the subsection with which the teacher was charged, as this issue was not raised.

In *Collaso v. Bureau of Professional and Occupational Affairs, State Board of Social Workers, Marriage & Family Therapists & Professional Counselors* (Pa. Cmwlth., No. 1118 C.D. 2015, filed July 1, 2016), a social worker had her license to practice clinical social work revoked after being convicted of simple assault. We examined *Bowalick* and explained that the decision was consistent with other decisions limiting the determination of whether a particular crime was involved to a review of the elements of the offense, not the details of the underlying behavior that formed the basis for the crime. However, in making that determination in *Collaso*, we explicitly considered the grade of the offense to which the social worker pled guilty, which had been specified as a misdemeanor of the second degree, in contrast to *Bowalick* where we did not consider the grade of the offense.

We next cited *Bowalick* in *Dunagan*, slip op. at 16-17. There, a nurse admitted to pleading nolo contendere to one count of disorderly conduct, a misdemeanor of the third degree. The Board held that this conviction qualified as a crime of moral turpitude and suspended the petitioner's nursing license. Similar to simple assault, the criminal statute for disorderly conduct also differentiated the grading of the offense based on the individual's conduct, providing for a third degree offense "if the intent of the actor [was] to cause substantial harm or serious inconvenience, or

if he persist[ed] in disorderly conduct after reasonable warning or request to desist. Otherwise[,] disorderly conduct is a summary offense." Section 5503(b) of the Crimes Code, 18 Pa.C.S. § 5503(b). Once more, as in *Collaso*, this Court explicitly considered the specific degree of the offense in deciding whether that offense was a crime of moral turpitude, as the Court's decision to reverse turned on the types of conduct embraced by third-degree disorderly conduct. Furthermore, in reaching its contrary decision that the disorderly conduct at issue qualified as a crime of moral turpitude, the Board in *Dunagan* had mistakenly relied on a handwritten note attached to the criminal information, which provided the underlying details of the crime. The Board conceded "it erred by referencing the context of [the p]etitioner's tumultuous behavior as being during the execution of a search warrant," in which the Board "pull[ed] that language from the handwritten note on the amended [c]riminal [i]nformation." *Dunagan*, slip op. at 12 (quotations and citations omitted). Thus, in reversing the Board's decision, the Court recognized that consideration of underlying facts or details in the charging document such as those indicating the circumstances surrounding an individual's specific behavior is impermissible, but consideration of the specific section of the criminal statute charged is not.

Analyzing these cases together, although the Court in *Bowalick* did not consider the specific degree of the crime, as the issue was not raised, the precedent supports consideration of the specific section or clause of a criminal statute under which an individual is charged and pleads guilty, as this Court did in both *Collaso* and *Dunagan*. On the other hand, any further consideration of the facts or details regarding the individual's specific behavior in committing the crime is not proper.

10

Here, Petitioner pled guilty to "Count 6." (R.R. at 64a, 69a.) Count 6 of the indictment states that Petitioner "knowingly and willfully conspired . . . to defraud the United States[.]" (*Id.* at 27a.) While the indictment goes on to discuss Petitioner's conduct that formed the basis for this charge, the Commission limited its review of the indictment to determining which clause of Section 371 was the basis for Petitioner's charge and ultimate guilty plea. Moreover, consideration of only this preliminary statement in the indictment does not implicate a review of the "underlying facts or details" of the indictment in violation of the regulation. 22 Pa. Code § 237.9(b). Because Section 371 can be violated in one of two ways – conspiring to commit another offense against or conspiring to defraud the United States – this limited review simply aids the reviewing agency or court in determining to which specific violation Petitioner pled guilty. This interpretation is also consistent with the purpose of 22 Pa. Code § 237.9(b), which is written to limit review of the details describing an individual's behavior in committing a crime so that a reviewing agency or court is not relitigating the individual's wrongdoing or being improperly influenced by the details of that conduct. Reviewing a charging document, such as the indictment here, to determine to which charge Petitioner pled guilty is unlike the Board's consideration of the handwritten note in *Dunagan*, as the Board there used the fact that the petitioner engaged in tumultuous behavior during the execution of a search warrant to influence its determination of the ultimate issue of whether the conviction qualified as a crime of moral turpitude. Furthermore, absent the ability to determine the specific crime of which an individual was convicted, it would become virtually impossible to determine whether the crime is one of moral turpitude, particularly in cases such as this where an individual is convicted of a crime that has different means of violation. Accordingly, we hold

11

that the Commission did not err by considering the specific charge in the indictment to which Petitioner pled guilty and, therefore, that substantial evidence exists for the Commission to find that Petitioner pled guilty to the defraud clause of Section 371.[9]

## B. Whether a violation of the defraud clause of Section 371 qualifies as a crime of moral turpitude.

### 1. Parties' Arguments

Petitioner argues that the "disjunctive nature" of Section 371 makes the determination as to whether Petitioner was convicted of a crime of moral turpitude based solely on the statute impossible, "[w]ithout a hearing and consideration of the underlying facts of the conviction[.]" (Petitioner's Br. at 15.)  Therefore, given that conspiracy is an "umbrella crime that may entail numerous underlying crimes[,]" Petitioner argues that "[c]onspiracy under [S]ection 371 alone is not a crime of moral turpitude[.]" (*Id.* at 17.)  Petitioner again relies on *Dunagan*, in which the Court analyzed the elements of disorderly conduct and concluded that "'because there are numerous iterations of disorderly conduct'" it was impossible to determine whether violation of that statute constitutes a crime of moral turpitude.  (*Id.* (quoting *Dunagan*, slip op. at 17).)  Accordingly, Petitioner argues that, similarly, conspiracy

---

[9] The Department also argues that Petitioner conceded to pleading guilty under the defraud clause and that this would constitute substantial evidence to support the Commission's finding. However, there was no evidence of record such as a transcript, or other evidence supporting that Petitioner or Petitioner's counsel conceded that his guilty plea was made under the defraud clause of Section 371.  Petitioner has explicitly and consistently rejected that he conceded as much.  For example, in his Response to the Department's Motion for Summary Judgment, Petitioner stated only that he pled guilty to Section 371, "which relates to conspiracy to commit [any] offense [against] or to defraud [the] United States."  (R.R. at 86a (internal quotations omitted).)  Absent record evidence of this concession, it cannot be said the Commission's finding that Petitioner conceded to pleading guilty under the defraud clause of Section 371 was supported by substantial evidence.  Nevertheless, as discussed above, we discern no error with the Commission's ultimate finding that Petitioner pled guilty under the defraud clause of Section 371.

is not itself a crime of moral turpitude, and, therefore, a general conviction under Section 371 is not sufficient for such a finding.

The Department responds that the Commission properly found that conspiracy to defraud the United States was a crime of moral turpitude. "As a general rule, all crimes of which fraud is an element are looked on as involving moral turpitude," and "the phrase 'crime involving moral turpitude' has without exception been construed to embrace fraudulent conduct," according to the Department. (Department's Br. at 15 (quoting *Moretti v. State Bd. of Pharmacy*, 277 A.2d 516, 519 (Pa. Cmwlth. 1971)).) The Department posits that "[a] person who acts with the intent to defraud the government by means that involve trickery, deceit, or dishonesty is acting 'contrary to justice, honesty[,] or good morals.'" (*Id.* at 16-17 (quoting 22 Pa. Code § 237.9(a)(2)).) Because the elements of conspiracy to defraud the United States "embrace fraudulent conduct and include fraud as an essential ingredient[,]" the Department maintains that "the Commission properly determined [c]onspiracy to [d]efraud the United States to be a crime involving moral turpitude." (*Id.* at 17.) The Department argues that Petitioner's position that Section 371 cannot be determined to involve moral turpitude on its face fails because Section 371 contains only one substantive offense, conspiracy to defraud the United States and, therefore, a conviction under Section 371, without any reference to or conviction under another substantive statute, necessarily means the offense involved "fraudulent or dishonest conduct with the intent to defraud, impede, or obstruct the lawful functions of the federal government." (*Id.* at 17-18.)

*2. Analysis*

Title 22 of the Pennsylvania Code states that "moral turpitude" includes:

13

(1) That element of personal misconduct in the private and social duties which a person owes to his fellow human beings or to society in general, which characterizes the act done as an act of baseness, vileness[,] or depravity, and contrary to the accepted and customary rule of right and duty between two human beings[,]

(2) [c]onduct done knowingly contrary to justice, honesty[,] or good morals[, and]

(3) [i]ntentional, knowing[,] or reckless conduct causing bodily injury to another or intentional, knowing[,] or reckless conduct which, by physical menace, puts another in fear of imminent serious bodily injury.

22 Pa. Code § 237.9(a).[10]  The United States Supreme Court has provided guidance

as to whether the crime of conspiracy to defraud the United States is a crime of moral

---

[10] The Code also enumerates specific crimes "involving moral turpitude per se" as including:

(1) An offense under 18 Pa.C.S. (relating to crimes and offenses) listed in section 111(e)(1) of the Public School Code of 1949[, Act of March 10, 1949, P.L. 30, *as amended*,] []24 P.S. § 1-111(e)(1)[].

(2) An offense designated as a felony under The Controlled Substance, Drug, Device and Cosmetic Act[, Act of April 14, 1972, P.L. 233, *as amended*,] []35 P.S. §§ 780-101–780-144[].  At any time subsequent to the adoption of this chapter if [S]ection 111(e)(1) is amended to add or delete crimes, the Commission will consider each additional or deleted crime to determine if the crime involves moral turpitude per se and will vote at a public meeting whether the crime will be designated as involving moral turpitude per se for purposes of cases coming before the Commission under [S]ection 9.2 of the [Act].

(3) An offense of a criminal law of the Commonwealth, the Federal government or another state or territory of the United States, or another nation, an element of which offense is delivery of a controlled substance or possession of a controlled substance with intent to deliver.

(4) A State offense, out-of-State offense or Federal offense or another nation, similar in nature to crimes listed in paragraphs (1)--(3).

22 Pa. Code § 237.9(c).

14

turpitude in *Jordan v. De George*, 341 U.S. 223, 229 (1951). In *Jordan*, the Supreme Court analyzed both federal and state law decisions concerning the definition of a crime of moral turpitude in relation to fraud, explaining that,

> [i]n view of these decisions, it can be concluded that fraud has consistently been regarded as such a contaminating component in any crime that American courts have, without exception, included such crimes within the scope of moral turpitude. **It is therefore clear, under an unbroken course of judicial decisions, that the crime of conspiring to defraud the United States is a "crime involving moral turpitude."**

*Id.* (emphasis added). Following *Jordan*, this Court analyzed the definition of a crime of moral turpitude under the Pharmacy Act[11] in relation to a pharmacist who had committed tax fraud in *Moretti*, 277 A.2d at 518. In *Moretti*, relying on *Jordan*, this Court held that "[a]s a general rule, all crimes of which fraud is an element are looked on as involving moral turpitude." *Id.* We analyzed the pharmacist's conviction for income tax evasion, finding that because fraud was an integral part of income tax evasion, such crime "squarely falls within the definition of moral turpitude laid down by the Supreme Court" in *Jordan*. *Id.* at 519. In so holding, we also relied on our Supreme Court's determination in *In re Alker*, in which our highest Court recognized that where an individual is convicted of tax evasion, "fraud is thereby made a part of the crime" such "as to integrate it within the scope of moral turpitude." 157 A.2d 749, 752 (Pa. 1960) (quotations and citation omitted). Moreover, we have found it axiomatic that "mail fraud is a crime in which fraud is an ingredient and[,] therefore, [] is a crime involving moral turpitude." *Startzel*, 562 A.2d at 1007 (citing *State Dental Council & Examining Bd. v. Friedman*, 367 A.2d 363 (Pa. Cmwlth. 1976)); *see also Yurick v. Dep't of State*, 402 A.2d 290 (Pa.

---

[11] Act of September 27, 1961, P.L. 1700, *as amended*, 63 P.S. §§ 390-1–390-13.

Cmwlth. 1979) (determining that a federal conviction for mail fraud constitutes a crime involving moral turpitude warranting the revocation or suspension of licenses to practice osteopathic medicine).  Accordingly, a crime that has an element of fraud on the face of the statute defining it qualifies as a crime of moral turpitude.

With regard to the Department's argument that a guilty plea solely under Section 371 must involve the defraud clause because the statute contains only one substantive offense, *Bowalick* and *Dunagan* are again instructive.  In *Bowalick*, this Court reversed the Commission's decision that simple assault qualified as a crime of moral turpitude.  We concluded that because there are "[m]any manifestations of simple assault," such that "someone may be convicted of simple assault in the context of a 'scuffle entered into by mutual consent,' the elements of the crime do not necessarily satisfy the definition of moral turpitude[.]"  *Bowalick*, 840 A.2d at 525.  We applied this reasoning in *Dunagan*, holding that "one may be convicted of disorderly conduct as a misdemeanor in the third degree for a variety of behaviors" and that many of those do not involve a crime of moral turpitude.  *Dunagan*, slip op. at 16.  To the extent that we are reviewing a general guilty plea under Section 371, because Section 371 entails both a general conspiracy clause and the defraud clause, it is comparable to both simple assault and disorderly conduct in that it criminalizes conduct that could clearly be of moral turpitude while also embracing conduct that could not.  Accordingly, a general conviction under Section 371 is not sufficient for a finding that a crime of moral turpitude was committed.

However, as discussed above, Petitioner pled guilty to the defraud clause of Section 371, specifically.  Looking to the defraud clause, it is clear that conspiracy to defraud the United States is a "crime[] of which fraud is an element."  *Moretti*, 277 A.2d at 518.  Moreover, one who commits conspiracy to defraud the United

16

States has necessarily engaged in "[c]onduct done knowingly contrary to justice, honesty[,] or good morals." 22 Pa. Code § 237.9(a)(2). Consistent with our decisions as to tax evasion, *Moretti*, 277 A.2d at 581, and mail fraud, *Startzel*, 562 A.2d at 1007, we hold that conspiracy to defraud the United States under Section 371 is a crime of moral turpitude and that the Commission did not err in its determination.

**C. Whether the Commission violated Petitioner's due process rights by revoking his certification and eligibility as an educator on summary judgment.**

*1. Parties' Arguments*

Petitioner argues that the revocation of his certification and eligibility to be employed as an educator without a hearing violated his right to due process because his "educator's license and eligibility for employment are constitutionally protected property rights that are entitled to due process protection." (Petitioner's Br. at 13-14 (citing *Petron v. Dep't of Educ.*, 726 A.2d 1091, 1093 (Pa. Cmwlth. 1999)).) Petitioner contends that "this Court has yet to affirm the revocation of licensures based upon a conviction under [S]ection 371 alone, but only in conjunction with convictions of additional crimes which were determinative of a finding of moral turpitude." (*Id.* at 16 (citing *Kinniry v. Pro. Standards & Pracs. Comm'n*, 678 A.2d 1230 (Pa. Cmwlth. 1996), and *Yurick*, 402 A.2d at 290).) Therefore, given that conspiracy is an "'umbrella' crime that may entail numerous underlying crimes[,]" Petitioner argues that "[c]onspiracy under [S]ection 371 alone is not a crime of moral turpitude" and that the Commission violated Petitioner's right to due process in revoking his certification and eligibility of employment as an educator on summary judgment. (*Id.* at 17.)

The Department responds that "the right to practice a chosen profession is subject to the lawful exercise of the power of the State to protect the public health, safety, welfare, and morals by promulgating laws and regulations that reasonably regulate occupations." (Department's Br. at 20 (citing *Khan v. State Bd. of Auctioneer Exam'rs*, 842 A.2d 936, 946 (Pa. 2004)).) Moreover, the Department contends, the right to engage in a particular licensed occupation is subject to certain conditions and, therefore, requires only that the rational basis test be satisfied. Further, the Department submits that "[t]his Court has consistently held that an educator's due process rights are not violated by the revocation of his or her teaching certificate on summary judg[]ment upon proof of conviction of a crime of moral turpitude." (*Id.* at 21 (citing *Bowalick*, 840 A.2d at 522, and *Kinniry*, 678 A.2d at 1234).) Finally, the Department submits that the Act provides for a "two-step decertification/recertification process," which allows Petitioner the opportunity to be readmitted to the profession after demonstrating that reinstatement is just and proper. (*Id*. at 21-22 (citing *Startzel*, 562 A.2d at 1008).) Accordingly, the Department argues that the revocation did not violate Petitioner's due process rights.

### 2. *Analysis*

It is well settled that a "teaching certificate is a constitutionally protected property right entitled to due process protection." *Petron*, 726 A.2d at 1093 (citing *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064 (3rd Cir. 1990)). The fundamental and essential requirements of due process are notice and the opportunity to be heard. *Long v. Bureau of Pro. & Occupational Affs.*, 112 A.3d 671, 677 (Pa. Cmwlth. 2015); *Gombach v. Bureau of Comm'ns, Elections & Legis.*, 692 A.2d 1127, 1129-30 (Pa. Cmwlth. 1997). To comply with procedural due process, the individual must be provided adequate information with which to prepare his or her defense. *Straw*

18

*v. Pa. Hum. Rels. Comm'n*, 308 A.2d 619, 621 (Pa. Cmwlth. 1973). In order for such notice to be constitutionally adequate, "it must at the very least contain a sufficient listing and explanation of any charges against the individual." *Gombach*, 692 A.2d at 1130 (citing *McClelland v. State Civ. Serv. Comm'n*, 322 A.2d 133 (Pa. Cmwlth. 1974)).

Of importance, and as Petitioner recognizes in his brief, (Petitioner's Br. at 14), we have stated that "[o]nce the Commission receives a certified copy of a conviction of a crime of moral turpitude, it is bound . . . to revoke an educator[']s certification. Upon proof of a conviction of a crime of moral turpitude, revocation on summary judgment does not violate due process." *Bowalick*, 840 A.2d at 522 (citing *Kinniry*, 678 A.2d at 1230).

In the present case, Petitioner was provided with the Notice that appraised Petitioner of the charges lodged against him in light of the guilty plea and the underlying facts upon which the Department was relying, which was filed along with a Motion for Summary Judgment. While Petitioner did not file an Answer to the Notice, he did file a Response to the Motion for Summary Judgment. The Notice informed Petitioner that if he "contest[ed] any factual assertion made in this Notice, [he] ha[d] a right to request, in writing, a hearing." (R.R. at 6a.) Thus, the Notice provided Petitioner with adequate information with which to prepare his defense, *Straw*, 308 A.2d at 621, as it "contain[ed] a sufficient listing and explanation of any charges against" him, *Gombach*, 692 A.2d at 1130. Petitioner then had the opportunity to be heard both through his Response to the Motion for Summary Judgment and during oral presentation of his case before the Commission. Accordingly, Petitioner was afforded adequate due process. Moreover, as we have held that Petitioner's guilty plea under the defraud clause of Section 371 qualifies as

19

a crime of moral turpitude, our precedent indicates that "revocation [of Petitioner's educator's certificate and eligibility] on summary judgment d[id] not violate due process." *Bowalick*, 840 A.2d at 522. Therefore, the Commission did not violate Petitioner's due process rights by revoking his educator's certificate and eligibility on summary judgment.[12]

---

[12] We also note that there remains process available for Petitioner to reobtain his certification and eligibility. This mechanism provides:

> An educator whose certificate or employment eligibility has been suspended, revoked or surrendered may apply to the [C]ommission for an order lifting the suspension or reinstating the certificate. The [C]ommission shall order the lifting of the suspension or reinstatement if the [C]ommission determines it would be just and proper. The [C]ommission shall seek and consider recommendations from the [D]epartment prior to ordering the lifting of the suspension or reinstatement of the certificate and employment eligibility and shall conduct hearings on the application at the request of the educator in accordance with procedures established by the [C]ommission in accordance with this act. The [C]ommission shall also seek and may consider recommendations from the school entity or entities in which the educator was employed at the time of the misconduct. For purposes of determining whether it is just and proper to lift a suspension or reinstate a certificate, the [C]ommission may consider:
>
> > (1) The conduct which resulted in discipline.
> > (2) Other past conduct of the applicant.
> > (3) The applicant's current attitude toward past conduct.
> > (4) Rehabilitation efforts and activities.
> > (4.1) Evidence of compliance with any conditions imposed as part of the discipline.
> > (5) References and letters of support of or in opposition to reinstatement.

Section 16 of the Act, 24 P.S. § 2070.16. Section 16 was added by Section 3 of the Act of December 14, 1989, P.L. 612.

## III.    CONCLUSION

Based on the foregoing, we affirm.

_____

**RENÉE COHN JUBELIRER,** Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

N.T.,                                                          :
                              Petitioner          :          **CASE SEALED**
                                                               :
          v.                                        :          No.  271 C.D. 2020
                                                               :
Department of Education,                     :
                              Respondent       :

# **O R D E R**

**NOW**, July 7, 2021, the Order of the Professional Standards and Practices Commission in the above captioned matter is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** Judge